[No. C023763. Third Dist., Nov. 20, 1998.]

ANTHONY HAYWOOD, Plaintiff and Respondent, v.
AMERICAN RIVER FIRE PROTECTION DISTRICT, Defendant and
Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to the California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

1294

COUNSEL

The Bleier Law Firm, Brenton A. Bleier and Alan C. Campbell for Defendant and Appellant.

Jones, Clifford, McDevitt, Naekel & Johnson and Jane E. Naekel for Plaintiff and Respondent.

OPINION

SCOTLAND, J.—Anthony Haywood's employment with American River Fire Protection District (the District) was terminated for cause following a series of increasingly serious disciplinary actions against him. After his discharge, he applied for disability retirement, claiming that stress from the disciplinary actions caused him to suffer a major depression, which rendered him incapable of performing his usual duties with the District.

Evidence presented at the administrative hearing on the application for disability retirement established that, by the time of the hearing, Haywood had recovered from his depression and was fully capable of performing the

duties of his former job for any other fire department. Nonetheless, he claimed he was entitled to disability retirement because, if he were to return to work for the District under the current administration that he believed had treated him unfairly, he would likely suffer additional depression that would make him unable to perform his usual duties.

The District denied the application for disability retirement, adopting the administrative law judge's finding that Haywood had "failed to demonstrate by competent medical evidence that he is incapacitated physically or mentally from the performance of his duties[.]"

Haywood sought review by petition for writ of administrative mandate. (Code Civ. Proc., § 1094.5.) The superior court held that whether Haywood was disabled had to be considered "in the context of the environment of the current or last place of employment, rather than some hypothetical environment at a new or different place of employment." The court then found Haywood was entitled to a disability retirement. It analogized his situation to that in which a physical ailment, such as asthma, would be affected by the physical environment of the employer's workplace so that the employee was unable to work there. It concluded that such an employee should be considered disabled and, by analogy, that Haywood should be considered mentally disabled from working for the District. Accordingly, the court issued a peremptory writ of mandate directing the District to set aside its administrative decision.

The District appeals, claiming the judgment must be reversed because the superior court misconstrued the disability retirement laws, the evidence does not support the court's determination that Haywood is entitled to disability retirement, and the decision "leads to an anomalous and illogical result."

In the published portion of this opinion, we conclude that Haywood is not entitled to disability retirement.

As we shall explain, there is an obvious distinction in public employment retirement laws between an employee who has become medically *unable* to perform his usual duties and one who has become *unwilling* to do so. Disability retirement laws address only the former. They are not intended to require an employer to pension-off an unwilling employee in order to maintain the standards of public service. Nor are they intended as a means by which an unwilling employee can retire early in derogation of the obligation of faithful performance of duty. In addition, while termination of an unwilling employee for cause completely severs the employer-employee relationship, disability retirement laws contemplate the potential reinstatement of that relationship if the employee recovers and no longer is disabled.

In this case, Haywood challenged his employer's authority and lost when, after a series of disciplinary actions, he was terminated for cause. The behavior which resulted in Haywood's firing—his unwillingness to faithfully perform his duties—was not caused by a physical or mental condition, and Haywood had no valid claim for disability retirement which could have been presented before he was fired.

Haywood's firing for cause constituted a complete severance of the employer-employee relationship, thus eliminating a necessary requisite for disability retirement—the potential reinstatement of his employment relationship with the District if it ultimately is determined that he no longer is disabled. Moreover, to award Haywood a disability pension would interfere with the District's authority to discipline recalcitrant employees. Such an award in effect would compel the District to pension-off an employee who has demonstrated unwillingness to faithfully perform his duties, and would reward Haywood with early retirement for his recalcitrance. In other words, granting Haywood disability retirement would override Haywood's termination for cause despite his inability to set aside the termination through the grievance process.

It follows that where, as here, an employee is fired for cause and the discharge is neither the ultimate result of a disabling medical condition nor preemptive of an otherwise valid claim for disability retirement, termination of the employment relationship renders the employee ineligible for disability retirement.[1]

Because Haywood was ineligible for disability retirement, we shall reverse the judgment with directions to the superior court to deny Haywood's petition for writ of administrative mandamus.[2]

## FACTS

Haywood began employment with the District as a firefighter in January 1976. He was promoted to engineer in 1981, thereby assuming, among other things, the responsibility of driving fire engines.

When the District elected to make its employees members of the Public Employees' Retirement System (PERS), Haywood became a "local safety member" of PERS. (Gov. Code, § 20420.)

---

[1] In light of this conclusion, we need not address the superior court's ruling that the fact Haywood is able to perform the duties of a firefighter with an employer other than the District does not preclude a finding that he is disabled, i.e., "incapacitated physically or mentally for the performance of his . . . duties in the state service . . . ." (Gov. Code, § 21156.)

[2] In the unpublished portion of our opinion, we deal with the District's argument that evidence of Haywood's disability was speculative.

The District has a policy of rotating personnel every three years. Pursuant to this policy, Haywood was assigned to the command of Captain Jerre Hertel at the beginning of 1992. Thereafter, Hertel received telephone calls of condolence from a number of other captains who said they had experienced problems with Haywood, primarily his attitude, while he was under their command. Hertel was told that Haywood could "do the job" if he wanted to, but he sometimes would adopt "the attitude that he'd rather do it his way" and would not follow an order without a discussion or argument. Hertel testified that, although personal peculiarities can be tolerated outside an emergency situation, when the alarm goes off there is no time to discuss or argue about how to do things; the captain's orders must be followed. The other captains also told Hertel that Haywood occasionally had failed to wear his safety equipment, which is an absolute requirement on an emergency call.

When Haywood began working for him, Hertel started keeping informal notes on incidents in which he had problems with Haywood. Hertel cited, as exemplary of Haywood's attitude, his frequent failure to stop his fire engine where Hertel directed during emergency calls. Hertel testified that crew safety is one of his first concerns on emergency calls, thus he would direct Haywood to stop in a position that would protect the crew. At times, Haywood would argue with Hertel over where the vehicle should be stopped and would slide it over to where Haywood wanted rather than follow Hertel's directions. In one incident, Hertel had been directed by the battalion chief to stop the fire engine in a particular location. Hertel told Haywood to stop there, but Haywood kept creeping the vehicle forward until, despite several orders from Hertel, he passed the location. Hertel testified there were other examples of Haywood's failure to follow directions, failure to perform his duties in an appropriate manner, or failure to wear his safety equipment as required.

By March 1992, Hertel had a list of approximately 18 incidents in which he questioned Haywood's performance. He gave the list to Battalion Chief Larkin, and a meeting was held with Larkin, Hertel, and Haywood. Five of the incidents formed the basis for formal disciplinary action, and Haywood was given a one-shift suspension.

During the following year, Haywood's conduct resulted in additional suspensions. At one point, Larkin directed that Haywood's assignment be rotated to different stations on a monthly basis so he could be evaluated by other captains.

In March 1993, Haywood was charged with willful disobedience and was demoted to firefighter. In April 1993, he was charged with willfully jeopardizing the health and safety of the public and inexcusable neglect of duty, and was terminated from employment effective April 30, 1993.

Pursuant to agreement between the District and its employees, disciplinary actions may be contested through grievance procedures with ultimate resolution through arbitration. Haywood filed grievances challenging the disciplinary actions against him, but had not succeeded in having them set aside.

On several occasions prior to termination of his employment, Haywood had visited a counselor, whose services were paid for by the District's employee assistance resources program. In December 1992, Haywood filed a claim for workers' compensation benefits, claiming his fear that a supervisor "may be watching [him] and looking for something that [he] didn't necessarily do right" had caused him to suffer psychic injury. At the request of the District or its insurance carrier, Haywood was evaluated by Dr. Platt, a board-certified psychiatrist. In April 1993, he saw Dr. Lyons, a board-certified psychiatrist who became Haywood's treating psychiatrist. He continued as a patient of Dr. Lyons until July 1994, when treatment was discontinued due to Haywood's "preoccup[ation] with legal issues surrounding his termination and workers' compensation claim." In June 1993 and January 1994, he was evaluated by Dr. Goodheart, a board-certified psychiatrist, in support of his workers' compensation claim. In September 1994, he was evaluated by Dr. Donlon, a board-certified psychiatrist, as an agreed medical examiner in the workers' compensation proceedings.

After the termination of his employment, Haywood filed an application for disability retirement. The District denied the application in March 1994. (Gov. Code, § 21156.) The parties have agreed that March 1994 is the appropriate focus date for consideration of the claim for disability retirement.

Following the denial of his application for disability retirement, Haywood requested an administrative hearing. (Gov. Code, § 21156.) At the hearing before an administrative law judge, the medical evidence consisted primarily of the reports of Drs. Platt, Lyons, Goodheart and Donlon, together with the testimony of Drs. Platt and Goodheart.

The medical evidence was conflicting as to the type of condition, if any, Haywood had.

Dr. Lyons reported that Haywood suffered from a "major depression of severe proportions." In reaching this conclusion, Dr. Lyons accepted at face

value Haywood's claim that he was being harassed by discriminatory discipline over minor matters.

Also accepting Haywood's claim that he was being treated in an abusive and harassing manner, Dr. Goodheart concluded that Haywood suffered a "Major Depression, Single Episode."

Dr. Donlon found clinical evidence for a "mild severity mental disorder where depression dominates." Noting that a primary issue would be whether the administrative actions taken against Haywood were objective and fair, Dr. Donlon recognized that question would be determined in a different forum. In the meantime, he addressed the issues with the view that the actions against Haywood may not have represented complete objectivity on the part of management. Dr. Donlon accepted a diagnosis of major depression, single episode "with significant remission" which, at the time he observed Haywood, was rated as "very mild/mild [in] severity."

Dr. Platt concluded that Haywood had not suffered any psychiatric injury; although Haywood displayed irritation, disgust, and anger over the disciplinary actions and was mildly depressed, neither his complaints nor his psychological testing supported a finding of a significant psychic injury or disease. Dr. Platt diagnosed a "Depressive Disorder NOS [not otherwise specified]," which he rated "very mild, non-disabling." He was critical of any diagnosis based upon the face value acceptance of Haywood's complaints of harassment and unfairness.

Although the experts were in conflict in the above respects, there were certain things upon which they were in agreement. They agreed that Haywood did not suffer from any underlying disease, defect or disorder, whether or not work-related, that caused his disciplinary problems and his depressive reaction to those problems. They agreed that, by the time relevant to his application for disability retirement, his depressive condition was in remission. And they agreed that Haywood was fully capable of returning to employment, and that he would be fully capable of performing the duties of his former position if he were to be hired by any other employer.

Haywood's claim for disability retirement is based upon the view that he could not return to work for *the District*, as evidenced by the following expert opinions.

In connection with the workers' compensation proceedings, Dr. Lyons had reported to the District's insurance adjuster that Haywood is "a highly intelligent, very conscientious, competent fireman, capable of adequately

performing his job if he is left alone and not harassed." In Dr. Lyons's view, "this is a case that need not go on to permanent psychiatric disability provided adequate steps are taken now to deal with his situation in a constructive fashion. [¶] For example, the insurance carrier should admonish [the District's] management to discontinue its discriminatory and vexatious practices against Mr. Haywood. Also the fire district directors should be admonished to control their fire commanders." Well before the focus date for purposes of Haywood's application for disability retirement, Dr. Lyons had begun urging him to return to the labor market. But Haywood was preoccupied with litigation over his workers' compensation claim and disciplinary matters and, in Dr. Lyons's words, "is one of those who tend to put their lives on hold awaiting the outcome [of litigation]." According to Haywood, Dr. Lyons urged him to return to work but advised him not to consider returning to the District's employ.

Dr. Goodheart concluded Haywood could return to employment *except with the District.* In a list of eight categories of work function, he rated Haywood's level of impairment as "None" to "Slight." At the administrative hearing, Dr. Goodheart testified those ratings were developed for workers' compensation purposes and evaluated an applicant's impairment with respect to the entire labor market; the ratings did not represent impairment with respect to a particular employer. He said that, by the time of his report in February 1994, he was not even considering as an option that Haywood could return to employment with the District. Dr. Goodheart reported that Haywood believed he could return to work in firefighting and could return to work for the District if there was a major reorganization and change in administration. However, Haywood said he could not return to work where supervisors Appel, Paulson, London, Couple, or Hertel would be. Dr. Goodheart believed it unlikely that alterations in the District's administration would occur and thus regarded Haywood as permanently and substantially incapacitated from returning to work for the District, although not for any other employer.

Dr. Donlon considered the workers' compensation list of work functions and, like Dr. Goodheart, rated Haywood's impairment as "None" to "Slight." He believed Haywood could return to employment, including employment with the District, although he agreed the latter might be "awkward." He suggested that Haywood's return to employment with the District would require appropriate behavior and attitude on both sides, but said that, "purely on a psychiatric basis," Haywood could return to his former job with the District.

Although Dr. Platt did not believe that Haywood sustained a psychic injury or that Haywood ever was disabled, he felt Haywood might have

continued problems with the District. He reported that Haywood's clinical presentation and psychological testing indicated some compulsivity, rigidity and stubbornness, and that Haywood "might behave in an oppositional fashion." From his review of the record, Dr. Platt believed Haywood was acting in a rigid and stubborn fashion and occasionally being defiant to his supervisor. Finding that these actions are antithetical to the nature of the job, Dr. Platt concluded, "[a]s long as [Haywood] is going to behave in this fashion he is going to have continued problems with [the District]."

Exercising its independent judgment, the superior court found that Haywood had suffered a severe depression as a result of the disciplinary actions against him, that the depression was now in remission, but that it would recur if Haywood resumed his usual duties with the District. Analogizing Haywood's situation to that in which a physical ailment, such as asthma, would be affected by the physical environment of the employer's workplace so that the employee could not work there, the superior court concluded Haywood should be considered mentally incapable of performing his usual duties for the District, and thus he is disabled for the purposes of disability retirement. The court's conclusion was based in part on its concern that a contrary interpretation of the disability retirement laws would create the risk that an employee, like Haywood, could be denied disability retirement based upon a determination that he is "able to perform the same duties with another employer where the fact of the matter was that there was no employment opportunity available to perform such duties with another employer." Thus, the court concluded that "it's appropriate to ask and answer the question with regard to substantial incapacity in the context of the environment of the current or last place of employment, rather than some hypothetical environment at a new or different place of employment."

DISCUSSION

I

This controversy presents the situation of an employee who challenged his employer's authority; was subjected to increasingly serious disciplinary actions; was ultimately terminated from employment for cause; was diagnosed by his experts as suffering from a major depression as a result of the disciplinary actions; has recovered from his depression with slight, if any, residual impairments; is capable of fully performing his former duties as a firefighter; but claims he is entitled to disability retirement because a return to work for his former employer would create a substantial risk of future depression should the old antagonisms with his supervisors arise again.

In Haywood's view, it is the specific duties with the employer from which the employee seeks disability retirement, rather than the employee's duties in a "generic" sense, that "define the scope of duties" for purposes of determining eligibility for disability retirement based upon the employee's incapacitation physically or mentally for the performance of his duties. Thus, Haywood argues, the superior court "properly concluded that [he] was disabled from his 'usual duties' if he was unable to return to work with the District even if he might be able to perform some firefighting duties with another hypothetical employer."

The District disagrees, asserting that, if Haywood "is not incapacitated from the performance of his duties for a contracting agency other than the District, he is not disabled" for purposes of a disability retirement. In the District's view, the superior court's finding to the contrary "leads to an anomalous and illogical result." Moreover, the District argues, expert opinion that Haywood is incapacitated for the performance of his duties with the District is speculative and insufficient to support a determination that he is disabled.

For reasons which follow, we conclude that uncontroverted evidence establishes Haywood is not eligible for disability retirement.

A

When it is established that a member of PERS "is incapacitated physically or mentally for the performance of his or her duties in the state service and is eligible to retire for disability, the [Board of Administration of the Public Employees' Retirement System] shall immediately retire [the member] for disability, unless the member is qualified to be retired for service and applies therefor prior to the effective date of his or her retirement for disability or within 30 days after the member is notified of his or her eligibility for retirement on account of disability, in which event the board shall retire the member for service." (Gov. Code, § 21156; further section references are to the Government Code unless specified otherwise.)

■ As a basis for PERS disability retirement, "incapacitated for the performance of duty" means "disability of permanent or extended and uncertain duration, as determined by the board, or in the case of a local safety member by the governing body of the [employer], on the basis of competent medical opinion." (§ 20026.)

Having been construed to require a claimant to establish a " 'substantial inability . . . to perform his usual duties. . . .' " (*Petrillo* v. *Bay Area Rapid*

*Transit Dist.* (1988) 197 Cal.App.3d 798, 811 [243 Cal.Rptr. 74], italics and citations omitted), this definition leaves it to governmental agencies and the courts to provide the definitional gloss necessary for resolving particular claims of disability.

It often is said that public employee pension legislation should be construed liberally in favor of the applicant. (See, e.g., *Barrett* v. *Stanislaus County Employees Retirement Assn.* (1987) 189 Cal.App.3d 1593, 1603 [234 Cal.Rptr. 900].) It must be kept in mind, however, that the legislative purpose is paramount. (*City of Huntington Beach* v. *Board of Administration* (1992) 4 Cal.4th 462, 472 [14 Cal.Rptr.2d 514, 841 P.2d 1034].) The rule of liberal construction cannot be permitted to eradicate the legislative purpose of the law or to allow eligibility for those for whom it obviously is not intended. (*Ibid.*; see § 20001.)

■ The legislative purpose of public employee pension programs is well established. They " 'serve two objectives: to induce persons to enter and continue in public service, and to provide subsistence for disabled or retired employees and their dependents. . . .' " (*Wheeler* v. *Board of Administration* (1979) 25 Cal.3d 600, 605 [159 Cal.Rptr. 336, 601 P.2d 568], citation omitted.) Disability pension laws are intended to alleviate the harshness that would accompany the termination of an employee who has become medically unable to perform his duties. (§ 20001.)

The development of disability retirement plans postdated the creation of merit systems of employment by state and local public employers. ■ Under civil service employment, qualified employees are given a legal expectation of continued employment. However, "[c]ourts have also upheld the policy that the public is best served when department officials are permitted to eliminate unqualified or undesirable personnel, and to replace them with persons better qualified." (*Hostetter* v. *Alderson* (1952) 38 Cal.2d 499, 504 [241 P.2d 230].) Because faithful performance of duty is an implied condition of employment (*MacIntyre* v. *Retirement Board of S. F.* (1941) 42 Cal.App.2d 734, 736 [109 P.2d 962]), an employee's unwillingness to faithfully discharge his duties is ample cause to terminate employment. (*Hostetter* v. *Alderson, supra*, 38 Cal.2d at pp. 504-505; *Schneider* v. *Civil Service Com.* (1955) 137 Cal.App.2d 277, 284-285 [290 P.2d 306].)

Thus, there is an obvious distinction between an employee who has become medically *unable* to perform his usual duties and one who has become *unwilling* to do so. Disability retirement laws address only the former. They are not intended to require an employer to pension-off an

unwilling employee in order to maintain the standards of public service. (See *Schneider* v. *Civil Service Com., supra*, 137 Cal.App.2d at p. 285 [upholding the termination of employment as a means to deal with an unwilling employee].) Nor are disability retirement laws intended as a means by which an unwilling employee can retire early in derogation of the obligation of faithful performance of duty. " 'The pension roll is a roll of honor—a reward of merit, not a refuge from disgrace; and it would be an absurd construction of the language creating it to hold that the intention of the Legislature was to give a life annuity to persons who, on their merits, as distinguished from mere time of service, might be dismissed from the force for misbehavior.' " (*MacIntyre* v. *Retirement Board of S. F., supra*, 42 Cal.App.2d at p. 736.)

This unable/unwilling dichotomy, and the role of disability retirement in addressing only the unable-to-work prong, is apparent in the PERS law. For example, while nothing in the PERS law restricts an employer's right to fire an unwilling employee, the Legislature has precluded an employer from terminating an employee because of medical disability if the employee would be otherwise eligible for disability retirement. (§ 21153.) In such a case, the employer must instead apply for the disability retirement of the employee. (*Ibid.*) In addition, while termination of an unwilling employee for cause results in a complete severance of the employer-employee relationship (§ 19583.1), disability retirement laws contemplate the potential reinstatement of that relationship if the employee recovers and no longer is disabled. Until an employee on disability retirement reaches the age of voluntary retirement, an employer may require the employee to undergo a medical examination to determine whether the disability continues. (§ 21192.) And an employee on disability retirement may apply for reinstatement on the ground of recovery. (*Ibid.*) If an employee on disability retirement is found not to be disabled any longer, the employer may reinstate the employee, and his disability allowance terminates. (§ 21193.)

B

We address Haywood's claim for disability retirement in light of this dichotomy in public employment pension law, and with the understanding that, in applying the provisions of disability pension law, courts must adhere to the legislative purposes of the law and limit disability retirement to those for whom it is intended. (*City of Huntington Beach* v. *Board of Administration, supra*, 4 Cal.4th at p. 472.)

As we have noted, Haywood challenged his employer's authority and lost when, after a series of disciplinary actions, he was properly terminated for

cause. There is no claim, or evidence which would support a claim, that the termination for cause was due to behavior caused by a physical or mental condition. And there is no claim, or evidence which would support a claim, of eligibility for disability retirement that could have been presented before the disciplinary actions were taken. Instead, Haywood asserts he has become psychologically unable to return to employment with the District as the result of his reaction to the disciplinary proceeding which resulted in a complete severance of the employment relationship.

In these circumstances, the nature and purposes of public employment disability retirement provisions dictate rejection of Haywood's claim.

Haywood's firing for cause constituted a complete severance of the employer-employee relationship, thus eliminating a necessary requisite for disability retirement—the potential reinstatement of his employment relationship with the District if it ultimately is determined that he no longer is disabled.

Moreover, to award Haywood disability retirement would interfere with the District's authority to discipline recalcitrant employees. Such an award in effect would compel the District to pension-off an employee who has demonstrated unwillingness to faithfully perform his duties, and would reward Haywood with early retirement for his recalcitrance.

In other words, granting Haywood disability retirement would override Haywood's termination for cause despite his inability to set aside the termination through the grievance process.

Haywood's claim for disability retirement assumes that he is entitled to disability retirement despite his termination for cause unrelated to his alleged medical condition. ■ This assumption is based upon Haywood's view that an employee is entitled to disability retirement so long as he files a timely application under section 21154, regardless of the reason for leaving employment.

Section 21154 provides: "The application shall be made only (a) while the member is in state service, or (b) while the member for whom contributions will be made under Section 20997, is absent on military service, or (c) within four months after the discontinuance of the state service of the member, or while on an approved leave of absence, or (d) while the member is physically or mentally incapacitated to perform duties from the date of discontinuance of state service to the time of application or motion. On receipt of an application for disability retirement of a member, other than a

local safety member with the exception of a school safety member, the board shall, or of its own motion it may, order a medical examination of a member who is otherwise eligible to retire for disability to determine whether the member is incapacitated for the performance of duty. On receipt of the application with respect to a local safety member other than a school safety member, the board shall request the governing body of the contracting agency employing the member to make the determination."

We reject a construction of section 21154 that would establish eligibility for disability retirement whenever a timely application is submitted. The section simply reflects a legislative intent that a claimed disability bear a causal relationship to the discontinuance of service by providing outside time limits, referenced to the cessation of service, within which an application must be filed or need not be considered. Notably, section 21154 specifies that, when a timely application is filed, the employee must be both "otherwise eligible to retire for disability" and "incapacitated for the performance of duty" in order to be granted disability retirement. In this respect, the section provides a procedural time limit within which an application for disability retirement must be filed, but does not provide for substantive eligibility whenever a timely application is filed.

As to whether Haywood is "eligible to retire for disability" (§§ 21154, 21156), the disability provisions of the PERS law contemplate a potential return to active service. Those provisions are not intended to abrogate or restrict an employer's right to discharge an employee for cause upon a demonstrated unwillingness to faithfully perform the duties of employment.

For all the reasons stated above, we conclude that where, as here, an employee is fired for cause and the discharge is neither the ultimate result of a disabling medical condition nor preemptive of an otherwise valid claim for disability retirement, the termination of the employment relationship renders the employee ineligible for disability retirement regardless of whether a timely application is filed.

Our conclusion is consistent with holdings in similar cases involving claims for benefits after the termination of employment.

In *Duff* v. *City of Gardena* (1980) 108 Cal.App.3d 930 [167 Cal.Rptr. 4], the claimant was a firefighter who was terminated at the conclusion of his probationary period on the ground that he was unable to maintain the required standards of employment. After the termination of his employment, he filed an application for disability retirement on the basis of an alleged psychiatric-emotional injury. The Court of Appeal found the termination was

for cause during the probationary period rather than for medical disability, and concluded this fact precluded the claim for disability retirement. (*Id.*, at pp. 933, 937.)

Two workers' compensation decisions also are analogous to Haywood's situation. Pursuant to Labor Code section 4850, a local peace officer or firefighter who is injured in the course of duty is entitled to a paid leave of absence for up to one year in lieu of temporary disability payments. The court in *Collins* v. *County of Los Angeles* (1976) 55 Cal.App.3d 594 [126 Cal.Rptr. 541] noted that this section contemplates the continued existence of the employment relationship, and found that the section is inapplicable where the relationship had been terminated through resignation. (*Id.*, at p. 597.) Subsequently, the court in *County of San Mateo* v. *Workers' Comp. Appeals Bd.* (1982) 133 Cal.App.3d 737 [184 Cal.Rptr. 240] adhered to the *Collins* conclusion where an employee resigned upon being given the choice of resignation or termination. It reasoned that the termination was for cause, not because of the claimed disability, and the termination of the employment relationship precluded an award under Labor Code section 4850. (133 Cal.App.3d at pp. 742-745.)

Although the decisions in *Duff* v. *City of Gardena, supra,* 108 Cal.App.3d 930, *Collins* v. *County of Los Angeles, supra,* 55 Cal.App.3d 594, and *County of San Mateo* v. *Workers' Comp. Appeals Bd., supra,* 133 Cal.App.3d 737 are not directly controlling here, they are closely analogous and may be considered in applying the provisions of the PERS law. (*Reynolds* v. *City of San Carlos* (1981) 126 Cal.App.3d 208, 214, 216 [178 Cal.Rptr. 636]; *Heaton* v. *Marin County Employees Retirement Bd.* (1976) 63 Cal.App.3d 421, 428 [133 Cal.Rptr. 809].)

Because Haywood is ineligible for disability retirement, the superior court erred in issuing a peremptory writ of mandate directing the District to set aside its administrative decision denying Haywood's application for such benefits.

## II*

. . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is reversed. The matter is remanded to the superior court with directions to deny Haywood's petition for a writ of administrative

*See footnote, *ante,* page 1292.

mandamus. Haywood shall reimburse the District for its costs on appeal. (Cal. Rules of Court, rule 26(a).)

Puglia, P. J., and Davis, J., concurred.

Respondent's petition for review by the Supreme Court was denied February 17, 1999.