Filed 10/25/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CARI McCORMICK,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA PUBLIC EMPLOYEES'<br>RETIREMENT SYSTEM,<br><br>    Defendant and Respondent. | A154236<br><br>(Lake County<br>Super. Ct. No. CV 416903) |

Plaintiff Cari McCormick worked as an appraiser for Lake County. She developed certain medical symptoms, including pain, fatigue, and dizziness, that seemed to be caused by her office environment. After her employer denied her request to work in a different location, she applied for disability retirement. Adopting the decision of an administrative law judge (ALJ), the Board of Administration (Board) of the California Public Employees' Retirement System (CalPERS) denied her application on the basis that her condition did not prevent her from performing her job duties at a theoretical different location. McCormick filed a petition for a writ of administrative mandate, which the trial court denied.

On appeal, McCormick claims that the trial court's decision must be reversed because it applied the wrong legal standard. We agree. We hold that employees are eligible for CalPERS disability retirement under Government Code[1] section 21156 when, due to a disability, they can no longer perform their usual duties at the only location where their employer will allow them to work, even if they might be able to perform

---

[1] All further statutory references are to the Government Code unless otherwise noted.

those duties at a theoretical different location.  We therefore reverse and remand for further proceedings.[2]

## I.
### FACTUAL AND PROCEDURAL BACKGROUND

McCormick began working for Lake County in 2002.  Her primary job duties involved appraising real property for property-tax purposes.  She performed most of her work in an office in the Lakeport courthouse, although she sometimes conducted field inspections.

In 2010, McCormick started to experience physical pain throughout her body and feel "constantly fatigued."  Her symptoms worsened at the end of 2011, and on April 10, 2012, she could not finish a full day of work.  On the previous day, the building had to be evacuated because of fumes caused by the roof being tarred.  A consistent "horrible smell" persisted, and other people complained as well.  McCormick felt much better if she was at home or outside, and she began working only half days.

When McCormick originally sought medical treatment, she was led to believe that the problem was hormonal.  In May 2012, she had a hysterectomy and recovered at home for six weeks, during which she felt much better.  When she went back to work, however, "the smell was still there," and her symptoms returned when she was in the office.  Her superiors moved her to different locations in the courthouse, but the changes did not help. She used about 500 accrued hours of leave.

McCormick was eventually told by her superiors that she "was a liability" and "should stay home."  She filed a claim for workers' compensation and, beginning in late 2012, took an extended leave of absence under the Family Medical Leave Act.  She continued to ask for accommodations, such as permission to telecommute, believing she "just needed to be somewhere where [she] felt safe, knowing that [she] was able to

_____

[2] Before oral argument, we issued a tentative opinion that is substantively identical to the final version.  (See Ct. App., First Dist., Local Rules of Ct., rule 15(b).)  In response, CalPERS stated that it was "willing[] to accept the Court's disposition for this matter."

2

breathe the air." But her superiors declined to let her work anywhere other than in the courthouse.

As part of the workers' compensation process, McCormick was tested for allergies and examined by a specialist in environmental health, who told her that her problems were caused by chemical exposure. Testing of the courthouse revealed no mold and showed acceptable air quality, however, and her workers' compensation claim was denied. In May 2013, Lake County terminated her employment because she had exhausted her medical leave.

In late 2013, McCormick submitted an application for disability retirement to CalPERS.[3] In the application, she stated her disability was "[respiratory] and systemic health problems as a result of exposures in indoor environment" at the courthouse. She also explained she could "work in another building as long as [she] remain[ed] asym[p]tomatic" but her employer "would not provide [her] a place outside" the courthouse. CalPERS denied the application in December 2014.[4]

McCormick appealed the decision, and an administrative hearing on the appeal was held in June 2016. In addition to her own testimony about her condition, McCormick relied on medical evidence from Massoud Mahmoudi, D.O. Dr. Mahmoudi examined McCormick in February 2013, in connection with her workers' compensation claim, and diagnosed her with "[a]llergic rhinitis" and an "allergic-like reaction of unknown etiology." The specific trigger of her symptoms was unclear, although they were associated with her workplace, and he concluded that "avoidance [of] the work . . . environment [was] the best remedy."

In his initial report, Dr. Mahmoudi concluded that McCormick was "temporarily partially disabled" but did not have a "permanent impairment." At the hearing, he

---

[3] McCormick is a local miscellaneous member of CalPERS. (See § 20383; *Metropolitan Water Dist. v. Superior Court* (2004) 32 Cal.4th 491, 496.)

[4] After filing the application for disability retirement, McCormick filed an application for service retirement, which was approved. In denying the application for disability retirement, CalPERS noted that McCormick would continue to receive her service retirement benefits.

3

explained he had assumed in forming his initial assessment that she would be able to find a different location in which to work. While his diagnosis remained unchanged, he had since concluded that McCormick was permanently disabled to the extent she was "unable to work [at the courthouse] due to her symptoms."

CalPERS presented medical evidence from Soheila Benrazavi, M.D., who examined McCormick in June 2014. The exam revealed no physical abnormalities, and Dr. Benrazavi concluded that McCormick did not have any physical or mental condition that would prevent her from performing her job duties. At the hearing, Dr. Benrazavi explained that, while there was no doubt McCormick was experiencing real symptoms that were associated with her workplace, "if the environment can be amended or . . . accommodations [could be provided] to help her, then she would not be disabled."

The ALJ issued a proposed decision denying the appeal in July 2016. Although there was no dispute that McCormick had a legitimate medical condition, the decision concluded that the two doctors agreed "that [she] was not permanently disabled or substantially incapacitated from performing her usual duties as an Appraiser III for the County on the basis of her internal condition at the time she submitted her [a]pplication." The decision rejected McCormick's argument that she was entitled to disability retirement "because she was substantially incapacitated from performing her duties at the [c]ourthouse, and the County would not accommodate her to work at a location outside the [c]ourthouse." Instead, it concluded that the evidence failed to show that her "internal condition restricts . . . her ability to complete her job[] duties." In September 2016, the Board adopted the ALJ's proposed decision, and McCormick filed an unsuccessful petition for reconsideration.

McCormick then filed a petition for a writ of administrative mandate, which the trial court denied in February 2018. Characterizing the evidence as "essentially uncontroverted," the court framed the determinative issue as "[t]he legal issue . . . whether an incapacity sufficient to enable a person to obtain disability retirement can be confined to a certain restricted environment." After observing that the "answer . . . depends primarily on the size and scope of the particular environment involved," the

4

court determined that the relevant question was "whether or not the environment that triggers the disability is one that can be remedied or obviated":

> "And both of the doctors' opinions categorized Ms. McCormick's disability as temporary. Both of them opined that . . . there was nothing they could find in their examination of Ms. McCormick that would prevent her from performing all of the listed duties required of her, if the offending environment, . . . the Lake County Courthouse, was purged of the offending triggers. Or, secondarily, [if] she could be transferred to a different location so as to avoid those offending triggers.
>
> [¶] . . . [¶]
>
> "Both doctors basically said, 'Get [McCormick] out of the courthouse and there are no usual duties of an Appraiser III that she can't do.' The failure to accommodate [her] is the problem, in my view, not her inability to perform physically the various duties required of her in that position."

## II.
## DISCUSSION

*A.     General Legal Standards.*

    1.     Standards of review.

In her petition for a writ of administrative mandate, McCormick sought to overturn the Board's decision as an abuse of discretion under Code of Civil Procedure section 1094.5, subdivision (c), because it was not "supported by the weight of the evidence." Where, as here, " 'the administrative decision substantially affects a fundamental vested right, the trial court must exercise its independent judgment on the evidence[,] . . . not only examin[ing] the administrative record for errors of law, but . . . also conduct[ing] an independent review of the entire record to determine whether the weight of the evidence supports the administrative findings.' " (*Ogundare v. Department of Industrial Relations* (2013) 214 Cal.App.4th 822, 827; see *Beckley v. Board of Administration etc.* (2013) 222 Cal.App.4th 691, 697 [disabled public employee has fundamental vested right to disability pension].) In turn, when the trial court exercises independent review, we review the court's factual findings for substantial evidence.

5

(*Ogundare*, at p. 828.) In doing so, we "resolv[e] all evidentiary conflicts and draw[] all legitimate and reasonable inferences in favor of the court's decision." (*Cassidy v. California Bd. of Accountancy* (2013) 220 Cal.App.4th 620, 627.)

We agree with the trial court, however, that the essential issue presented here is a legal one: whether McCormick is incapacitated within the meaning of section 21156 because of her inability to perform her duties in a particular location, the Lakeport courthouse. Where, as here, a court decides " 'pure questions of law . . . upon undisputed facts,' " our review is de novo. (*Cassidy v. California Bd. of Accountancy*, *supra*, 220 Cal.App.4th at p. 627.)

### 2. The interpretation of section 21156.

"The rules governing statutory construction are well settled. We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] To determine legislative intent, we turn first to the words of the statute, giving them their usual and ordinary meaning. [Citations.] When the language of a statute is clear, we need go no further. However, when the language is susceptible of more than one reasonable interpretation, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340 (*Nolan*).) In particular, "we give great weight to CalPERS's construction of California's Public Employees' Retirement Law (PERL) (Gov. Code, § 20000 et seq.). [Citations.] If, however, there is 'any ambiguity or uncertainty in the meaning of [the Public Employees' Retirement System] legislation [it] is to be liberally construed in favor of the public employee, as long as such construction is consistent with the clear language and purpose of the statute.' " (*Beckley v. Board of Administration etc.*, *supra*, 222 Cal.App.4th at p. 697, fn. omitted; see *Haywood v. American River Fire Protection Dist.* (1998) 67 Cal.App.4th 1292, 1304 ["The rule of liberal construction cannot be permitted to eradicate the legislative purpose of [the PERL] or to allow eligibility for those for whom it obviously is not intended"].)

6

"The test for determining whether an employee subject to [the PERL] is disabled is set forth in . . . section 21156." (*Jones v. Los Angeles County Office of Education* (2005) 134 Cal.App.4th 983, 990.) Under that statute, "[i]f the medical examination and other available information show to the satisfaction of the [B]oard . . . that the member in the state service is incapacitated physically or mentally for the performance of his or her duties and is eligible to retire for disability, the [B]oard shall immediately retire him or her for disability." (§ 21156, subd. (a)(1); see § 20021.) " 'Disability' and 'incapacity for performance of duty' as a basis of retirement, mean disability of permanent or extended and uncertain duration, as determined by the [B]oard . . . , on the basis of competent medical opinion." (Former § 20026.)[5] In turn, "incapacity for performance of duty" has been interpreted "to mean 'the substantial inability of the applicant to perform his [or her] usual duties.' " (*Rodriguez v. City of Santa Cruz* (2014) 227 Cal.App.4th 1443, 1451, quoting *Mansperger v. Public Employees' Retirement System* (1970) 6 Cal.App.3d 873, 876, italics omitted.)

> B.  *The Trial Court Assumed the Courthouse Was the Cause of McCormick's Symptoms, and It Made No Finding to the Contrary.*

Initially, we address CalPERS's claim that we can affirm the denial of McCormick's petition on the basis that the trial court made a "factual finding" that "competent medical evidence established that [McCormick] was capable of performing her usual duties." CalPERS cites the following two sentences from the statement of decision as constituting this finding: "Both [doctors] opined that . . . there was nothing that they could find in their examination of Ms. McCormick that would prevent her from performing all of the listed duties required of her, if the offending environment, which just coincidentally is the building in which I sit, the Lake County Courthouse, was purged of the offending triggers. Or, secondarily, whether she could be transferred to a different location so as to avoid those offending triggers."

---

[5] Effective January 1, 2018, section 20026 was amended to specify that a disability expected to last at least 12 months or result in death qualifies as one of "extended duration." (Stats. 2017, ch. 241, § 1.)

These statements amount to the unremarkable observation that McCormick—as she effectively concedes—was physically capable of performing her usual duties *if* she worked in an environment that did not trigger her symptoms. But contrary to CalPERS's argument, these statements do not reflect a finding that the courthouse did not cause McCormick's symptoms. To the contrary, they reflect an assumption that her symptoms *were* caused by the courthouse. Thus, it is irrelevant whether CalPERS is correct that "no medical and/or scientific evidence establish[ed] that the [c]ourthouse was the cause of [McCormick's] alleged medical condition." Even if substantial evidence was presented upon which the trial court *could* have found that McCormick's symptoms were not caused by the courthouse, we cannot affirm the denial of the petition based on such a hypothetically possible but nonexistent finding.

### C. *A CalPERS Member's Usual Duties Are Those Required by the Member's Actual Employer, and Lake County Required McCormick to Work at the Courthouse.*

We now turn to the role of a member's employer in determining the scope of the member's usual "duties" under section 21156. The parties focus on *Nolan*, in which our state Supreme Court addressed whether an Anaheim police officer who experienced extreme "threats and harassment by other Anaheim officers" was psychologically incapacitated for the performance of his duties under former section 21156. (*Nolan*, *supra*, 33 Cal.4th at pp. 338–339.) At the time, the statute required that a member be "incapacitated physically or mentally for the performance of his or her duties *in the state service*." (Former § 21156, italics added; *Nolan*, at p. 338.) Focusing on the phrase "in the state service," the Court rejected the officer's claim that "he need only show he is incapable of continuing to perform his duties as a patrol officer for Anaheim," i.e., his "last employer," and held that he was also required to show "that he is incapacitated from performing the usual duties of a patrol officer for other California law enforcement agencies." (*Nolan*, at pp. 338, 341–342, italics omitted.)

Two years later, in response to *Nolan*, the Legislature amended section 21156. Instead of requiring that the member be incapacitated "for the performance of his or her

duties *in the state service*," the statute now requires "that the member *in the state service* [be] incapacitated physically or mentally for the performance of his or her duties." (Assem. Bill No. 2244 (2005–2006 Reg. Sess.) § 10, italics added.) According to the Senate floor analysis of the bill,

> "Historically, CalPERS has interpreted duties 'in the state service' to mean the actual duties the member was performing when he or she became disabled with his or her current employer. In September 2004, however, the California Supreme Court, in the *Nolan* decision, interpreted this section more broadly thereby establishing a new standard that . . . must [be met] to qualify for disability retirement.
>
> "Specifically, the Supreme Court changed the criteria for determining disability retirement by interpreting 'in the state service' to require a CalPERS member to show that he or she is not only substantially incapacitated from performing the usual duties of the position for his or her current employer, but also from performing the usual duties of the position for other CalPERS-covered employers.
>
> ". . . [T]he change proposed by this bill would serve to reaffirm CalPERS'[s] historical practice that a member would be eligible for disability retirement provided he or she could show substantial incapacity to perform the usual duties required of his or her current employer."

(Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Assembly Bill No. 2244, as introduced Feb. 22, 2006.)

Here, the trial court remarked that it would "make[] no sense" if McCormick was to receive disability retirement and be able to "go across the street and get a job [with a different employer] as an appraiser with all of the same duties as an Appraiser III" and "be working doing the exact same things that she was found to have been disabled for and received a disability retirement for." But as the legislative response to *Nolan* makes clear, section 21156 is concerned with members' ability to perform their duties for their actual employers, not their ability to perform those duties in the abstract. Thus, the relevant question is whether McCormick was incapacitated from performing the duties of an Appraiser III for Lake County, not whether she was incapacitated from performing them elsewhere.

9

That this is the critical question is supported by *Lonicki v. Sutter Health Central* (2008) 43 Cal.4th 201 (*Lonicki*). *Lonicki* addressed the scope of an employee's essential functions under the Moore-Brown-Roberti Family Rights Act (§§ 12945.1, 12945.2) (CFRA). The CFRA authorizes a covered employee to take "up to 12 weeks of unpaid 'family care and medical leave' " in certain circumstances, including "when 'an employee's own serious health condition . . . makes the employee unable to perform *the functions of the position of that employee*.' " (*Lonicki*, at p. 208, some italics omitted.) The *Lonicki* plaintiff claimed that her depression prevented her from working at one of the defendant's hospitals, but while she was away from that hospital she worked part time for a different hospital doing similar work. (*Id.* at p. 207.) The Court of Appeal held that she was not entitled to medical leave because "under the CFRA an employer must grant medical leave only if the employee is unable to perform the employee's essential job functions 'generally, rather than for a specific employer.' " (*Id.* at p. 214.)

The Supreme Court reversed, concluding that " 'the inquiry into whether an employee is able to perform the essential functions of her job should focus on her ability to perform those functions *in her current environment*.' " (*Lonicki*, *supra*, 43 Cal.4th at pp. 214–215, quoting *Stekloff v. St. John's Mercy Health Systems* (8th Cir. 2000) 218 F.3d 858, 862, italics added.) Thus, like the PERL, the CFRA requires an employer-specific analysis of the scope of an employee's duties. The Supreme Court explained that under such an analysis, "[w]hen a serious health condition prevents an employee from doing the tasks of an assigned position, this does not necessarily indicate that the employee is incapable of doing a similar job for another employer. By way of illustration: A job in the emergency room of a hospital that commonly treats a high volume of life-threatening injuries may be far more stressful than similar work in the emergency room of a hospital that sees relatively few such injuries. Also, the circumstance that one job is full time whereas the other is part time may be significant: Some physical or mental illnesses may prevent an employee from having a full-time job, yet not render the employee incapable of working only part time." (*Lonicki*, at p. 215.) The parallels to this case are clear. McCormick's theoretical ability to perform the duties

10

of an appraiser somewhere other than the Lakeport courthouse does not foreclose a finding under section 21156 that she was unable to perform her usual duties.

CalPERS argues that the trial court found that McCormick "failed to establish that her usual duties must be performed at the [c]ourthouse." But even if we were to agree that the court made such a finding, it would not be supported by substantial evidence. As CalPERS concedes and as we discuss in more detail below, Lake County denied McCormick's request for an accommodation, which included a request to work in a different location or environment. No evidence was presented that Lake County was willing to allow McCormick to work somewhere other than at the courthouse.

At the administrative hearing, CalPERS introduced two documents explaining the duties of an Appraiser III, the last position McCormick held with Lake County. As CalPERS observes, and the trial court agreed, the documents—Lake County's summary of the Appraiser III position and a CalPERS form McCormick filled out that further detailed the physical requirements of her position—"do not mention that [McCormick's] job must be performed at a specific location." CalPERS is incorrect, however, that these documents' silence as to the work location establish that Lake County did not require McCormick to work in the courthouse as part of her usual duties.

*Hosford v. Board of Administration* (1978) 77 Cal.App.3d 854 is instructive. There, the Court of Appeal rejected arguments that a California Highway Patrol sergeant's usual duties should "be determined exclusively by use of the job description prepared by the State Personnel Board"—which applied to sergeants specifically—or a "document titled 'Typical Physical Demands on the State Traffic Officers and Sergeants' prepared by the highway patrol"—which set forth "more strenuous functions." (*Id.* at pp. 858, 860.) In doing so, *Hosford* observed, "Obviously, although the Personnel Board's job description does not expressly state that a sergeant should be physically able to make arrests and subdue prisoners, his exposure to such activity is implied from the fact that he supervises traffic officers who perform such functions. By the same token, although sergeants are lumped together with traffic officers in the 'Typical Physical Demands' document, it is apparent from the evidence that the supervisory nature of their

11

work makes such physical demands upon sergeants much less frequent than upon traffic officers." (*Id.* at p. 860.) In other words, while official descriptions of a position's duties may inform the analysis (see *Nolan*, *supra*, 33 Cal.4th at p. 344), they must be construed in context and with common sense.

Here, the two documents' omission of any mention of the courthouse is insufficient evidence that McCormick's usual duties did not require her to work there. There is no question that an Appraiser III's duties included work in *an* office. Under the heading "Typical Working Conditions," the summary of the position stated, "Work is performed in office and outdoor environments, continuous contact with other staff and the public." (Some capitalization omitted.) If a position requires work in an office, and the employer has a particular office where that work is performed, it would be unreasonable to conclude, absent some evidence to the contrary, that the position's usual duties do not include working there. Moreover, the summary stated that the position required "continuous contact with other staff" and that training other staff was both a "distinguishing characteristic[]" and "important and essential dut[y]" of the position. (Some capitalization omitted.) This language clearly contemplated that an Appraiser III would spend at least some time in an office where other staff members also work. In short, there is no substantial evidence that McCormick's usual duties allowed her to work somewhere other than at the courthouse.

>    D.    *CalPERS Cannot Deny Disability Retirement on the Basis that a Member Could Perform His or Her Usual Duties with an Accommodation that Was Not Provided.*

Finally, we turn to the determinative legal issue in this case: whether, as CalPERS argues and the trial court agreed, members are ineligible for disability retirement when they are " 'physically capable of performing all of the usual duties for their actual employer, and the only impediment to performing the duties is [the] employer's alleged failure to provide reasonable accommodations.' " We conclude that CalPERS may not deny disability retirement under section 21156 when, due to a medical condition,

12

applicants can no longer perform their duties at the only location where their employer will allow them to work.

We begin by briefly reviewing the general requirement that employers accommodate employees who have a disability. The California Fair Employment and Housing Act (FEHA) "requires employers to make reasonable accommodation for the known disability of an employee unless doing so would produce undue hardship to the employer's operation. (Gov. Code, § 12940, subd. (m).)" (*Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 373.) "A reasonable accommodation is a modification or adjustment to the work environment that enables the employee to perform essential functions of the job he or she holds or desires." (*Ibid.*) Similarly, the Americans with Disabilities Act (ADA), on which "FEHA's accommodation requirements are modeled . . . , 'requires an employer, in the absence of undue hardship, to make "reasonable accommodation" for an employee . . . with a known disability.' " (*Nealy*, at p. 375, fn. 1.) Under both the FEHA and the ADA, a plaintiff suing an employer for disability discrimination must establish that he or she can, with or without reasonable accommodation, perform the essential duties of the job. (*Green v. State of California* (2007) 42 Cal.4th 254, 262–263.)

Here, we are not asked to decide whether Lake County properly denied McCormick's request for an accommodation to work somewhere other than at the courthouse.[6] Rather, we must decide what role, if any, the existence of a theoretical

---

[6] At least under the ADA, employers are generally not required to accommodate disabled employees by permitting them to work remotely. As the Ninth Circuit Court of Appeals has explained, "Both before and since the passage of the ADA, a majority of circuits have endorsed the proposition that in those jobs where performance requires attendance at the job, irregular attendance compromises essential job functions," such as in-person teamwork and interaction with clients or use of on-site items and equipment. (*Samper v. Providence St. Vincent Medical Center* (9th Cir. 2012) 675 F.3d 1233, 1237; see also *Tyndall v. National Educ. Centers* (4th Cir. 1994) 31 F.3d 209, 213.) Thus, "except in the unusual case where an employee can effectively perform all work-related duties at home [or another remote location], an employee 'who does not come to work cannot perform *any* of his [or her] job functions, essential or otherwise.' " (*Tyndall*, at

13

accommodation plays in determining a member's eligibility for disability retirement. The PERL itself contains no language tying eligibility for disability retirement to the possibility of an accommodation. This is unlike the Teachers' Retirement Law (Ed. Code, § 22000 et seq.), which defines "disability" for purposes of disability retirement as "any medically determinable physical or mental impairment that is permanent or that can be expected to last continuously for at least 12 months . . . that prevents a member from performing the member's usual duties for the member's employer, the member's usual duties for the member's employer *with reasonable modifications*, or the duties of a comparable level position for which the member is qualified or can become qualified." (Ed. Code, § 22126, italics added.) If a member applies for disability retirement and the Teachers' Retirement Board determines that he or she "may perform service in the member's former position of employment or in a comparable level position *with the assistance of reasonable accommodation*, the board may require the member to request reasonable accommodation from the employer." (*Id.*, § 24103, subd. (d), italics added; see *id.*, § 22109.) A member's failure to request accommodation is grounds for denial of the application, and "[i]f the employer fails or refuses to provide reasonable accommodation, the board may require the member to pursue an administrative appeal of the employer's denial as a condition for receiving a disability retirement allowance under this part." (*Id.*, § 24103, subds. (d)–(e).)

The Teachers' Retirement Law demonstrates that the Legislature was fully capable of giving CalPERS authority to require members to seek an accommodation as a prerequisite for disability-retirement eligibility. But it did not do so. "When the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning." (*People v. Trevino* (2001) 26 Cal.4th 237, 242.) And even if section 21156 could be interpreted to allow CalPERS to require a member to seek an

p. 213; accord *Smith v. Ameritech* (6th Cir. 1997) 129 F.3d 857, 867; *Vande Zande v. State of Wis. Dept. of Admin.* (7th Cir. 1995) 44 F.3d 538, 544–545.)

14

accommodation, that interpretation would not matter here because McCormick in fact asked for an accommodation, and it was—rightly or wrongly—denied.

In sum, we conclude that her usual duties required McCormick to work in the Lakeport courthouse, and whether she could have performed her duties elsewhere is irrelevant to her eligibility for disability retirement under section 21156. As a result, the trial court erred as a matter of law by concluding that her ability to perform her duties at a theoretical other location left her ineligible for disability retirement.

III.
DISPOSITION

The trial court's order denying the petition for writ of administrative mandate is reversed, and the matter is remanded for further proceedings consistent with this opinion.

15

_____
Humes, P.J.

WE CONCUR:


_____
Margulies, J.


_____
Sanchez, J.


*McCormick v. California Public Employees' Retirement System*  A154236

Trial Court:

      Lake County Superior Court


Trial Judge:

      Hon. David W. Herrick


Counsel for Plaintiff and Appellant:

      Benjamin K. Karpilow, Law Office of Richard J. Meechan


Counsel for Defendant and Respondent:

      Matthew G. Jacobs, General Counsel, California Public Employees' Retirement System

      John Shipley, Senior Attorney, California Public Employees' Retirement System

*McCormick v. California Public Employees' Retirement System*  A154236