[No. C044944. Third Dist. June 30, 2004.]

JEFFREY SMITH, Plaintiff and Appellant, v.
CITY OF NAPA et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION***]**

***Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of sections II, III and IV of the Discussion.

**COUNSEL**

Law Offices of John A. Bloom, John A. Bloom and David L. Matt for Plaintiff and Appellant.

Thomas B. Brown, City Attorney, David C. Jones, Deputy City Attorney; Liebert Cassidy Whitmore, Richard S. Whitmore, Jack W. Hughes; and William J. Gersten for Defendants and Respondents.

## Opinion

**DAVIS, J.**—Defendant City of Napa (City) dismissed plaintiff Jeffrey Smith from its fire department after he failed remedial tests of his competency at required skills. On the effective date of his dismissal, he filed an application for a disability retirement. (Gov. Code, § 21150 et seq.)[1] While his disability application was pending, the City Council affirmed the appeal of his dismissal. Defendant Board of Administration of the California Public Employees' Retirement System (CalPERS) eventually denied the disability claim, citing *Haywood v. American River Fire Protection Dist.* (1998) 67 Cal.App.4th 1292 [79 Cal.Rptr.2d 749] (*Haywood*), because plaintiff no longer had an employment relationship with the City.

The plaintiff filed this petition for a writ of mandate to direct the defendants to consider the merits of his application for a disability retirement. As the plaintiff failed to make a timely request for a statement of decision, the superior court summarily denied the petition.

■ In the published part of this opinion, we reject his criticisms of the *Haywood* holding as dictum extraneous to its ratio decidendi and as inconsistent with Supreme Court precedent. We also explain an oft-repeated qualification in *Haywood* that its ruling does not apply to a dismissal that "preempts" an otherwise valid claim for disability retirement. (67 Cal.App.4th at pp. 1297, 1306, 1307.) Contrary to the belief of the defendants, it does not refer only to a dismissal *intended* to thwart a claim for disability retirement, because a dismissal for cause cannot defeat an employee's *matured* right to a disability retirement antedating the event providing cause for the dismissal. The plaintiff, however, does not qualify for this restated exception to *Haywood*. We reject the remainder of his arguments in the unpublished portion of the Discussion. We will affirm the judgment.

### Standard of Review

■ In cases such as this, involving the fundamental vested rights of a plaintiff, the superior court exercises independent review of the administrative record to determine if the weight of the evidence supports the findings in the agency decision, and a plaintiff is entitled to a statement of decision upon timely request. (*Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 51, 67 [76 Cal.Rptr.2d 356].) The scope of our review, however, is limited to verifying that substantial evidence supports the trial court's findings. (*Id.* at p. 52.) If a plaintiff fails to make a timely request for a statement of decision, we then must infer any finding to uphold the judgment that has substantial

---

[1] Further undesignated section references are to the Government Code.

evidence in support in the administrative record. (Code Civ. Proc., §§ 632, 634; *Hall v. Bureau of Employment Agencies* (1976) 64 Cal.App.3d 482, 496 [138 Cal.Rptr. 725]; cf. *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133–1134 [275 Cal.Rptr. 797, 800 P.2d 1227] [similar rule for a failure to file objections to proposed statement of decision].) Contrary to the plaintiff's apparent belief, we may not impeach the trial court's ultimate judgment with its remarks at the hearing on the petition or in announcing its ruling from the bench. (*Yarrow v. State of California* (1960) 53 Cal.2d 427, 438 [2 Cal.Rptr. 137, 348 P.2d 687]; *In re Marriage of Ditto* (1988) 206 Cal.App.3d 643, 646–647 [253 Cal.Rptr. 770].) Our course through the administrative record is therefore targeted at the substantial evidence supporting the CalPERS decision, which we presume the trial court sustained on independent review.

█ One other factor affects our review of the record. The plaintiff never obtained judicial review of the decision of the City Council sustaining his dismissal.[2] Contrary to the belief of the trial court, a formal judicial ruling on the plaintiff's petition is not a necessary event, the absence of which is chargeable to the defendants, nor does its absence prevent the application of the principles of issue preclusion. In *Knickerbocker v. City of Stockton* (1988) 199 Cal.App.3d 235 [244 Cal.Rptr. 764] (*Knickerbocker*), we held that the failure of a *plaintiff* to *overturn* a decision of an administrative agency precludes the plaintiff from relitigating any actual adverse determination in a subsequent action at law. (*Id.* at pp. 243, 245.)[3] We thus view the present record through a filter that gives preclusive effect to all actual determinations in the decision of the City Council.

BACKGROUND

A

Plaintiff began working in the City's fire department in 1981. In 1990, he received a partial permanent disability rating of almost 15 percent in workers' compensation proceedings for an injury to his back.

In November 1999, the plaintiff settled ongoing disciplinary charges with the City. The settlement agreement required him to undergo remedial training and testing on equipment used in the course of his regular duties. After he

---

[2] The plaintiff filed a petition for mandate 91 days after the City mailed him notice of the decision affirming the appeal of his dismissal. Thus, the allegations of the petition demonstrated on its face that it was time-barred. (Code Civ. Proc., § 1094.6, subd. (b).) The City notified the plaintiff that it would not be preparing an administrative record (as the petition was subject to dismissal), and that he had also failed to perfect service of the petition on the City.

[3] *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 70–71 [99 Cal.Rptr.2d 316, 5 P.3d 874], cited *Knickerbocker* with approval, extending its principles even to subsequent actions at law for employment discrimination. (*Id.* at p. 65.)

failed a test, the City dismissed him in April 2000.[4] However, the Civil Service Commission of the City of Napa (Commission), believing that his long tenure entitled him to a second chance, reinstated him on the condition that he successfully complete certification in the four areas identified in the 1999 settlement agreement within three months of his return to duty.

The plaintiff returned to work on September 11, 2000, limited to light duty because of a restriction against lifting more than 25 pounds under the orders of Dr. Stagg (a doctor with whom the City contracted to evaluate the physical condition of employees, and who had also provided treatment to the plaintiff in the past).[5] The schedule for eight certifications of the plaintiff's skills acknowledged that this restriction might require postponement of the final three until further clarification of his physical status or return to full duty. After successfully completing five tests during October, the plaintiff was next to undergo certification on a ladder truck.

On October 30, the plaintiff asked to postpone the testing process until the completion of an evaluation of his medical status in the workers' compensation proceedings. He noted he was feeling "stress" in completing tasks that he believed was related to his physical injury. He adverted to the possibility that he thought he would be rated as disabled in the workers' compensation proceedings, alluding to the opinion of Dr. Blum.[6] The following day, noting the certification test on the ladder truck would not include lifting objects heavier than 25 pounds, the operations chief denied the request for a delay as too open-ended, out of concern with the time limit in the Commission's decision. The plaintiff then said he wanted to meet with Dr. Blum before

---

[4] After receiving a notice of impending dismissal in March 2000, the plaintiff—who had returned to full duty a month after a July 1999 back injury without any difficulties—first consulted with Dr. Blum for an ongoing workers' compensation claim based on the injury. Dr. Blum concluded that this was a strictly subjective matter qualifying him for temporary disability: "[t]here is no way to assess this complaint. It is either believed or not." The diagnosis was unchanged after consultations in May, June, and July 2000.

[5] In a September 12 report, while acknowledging that he had never reviewed the "complete file," "the records related to the prior injuries," "any formal medical legal reports," or "the report of the Qualified Medical Examiner," Dr. Blum concluded on the basis of his knowledge of the work of firefighters (and his assumption that there must be a list of critical tasks similar to the one for highway patrol officers, with which he was familiar) that the lifting restriction precluded the plaintiff from being fit for duty. On motion of the defendants, the CalPERS hearing officer excluded this opinion.

[6] The City, disputing the opinion of Dr. Blum, wanted an agreed medical examiner to evaluate the plaintiff. The appointment was for December 5, 2000. Dr. Thompson, the agreed medical examiner, also expressed the opinion that the plaintiff could not perform the duties of a firefighter based on his subjective reports of pain, and thus should be eligible for vocational rehabilitation. The City's workers' compensation carrier ultimately accepted Dr. Thompson's opinion after deposing him in February 2001 and agreed to rehabilitation services because the fire department did not have any permanent positions with modifiable duties. The CalPERS hearing officer excluded Dr. Thompson's opinion on the motion of the defendants.

taking the certification, and the earliest appointment was on November 2. The operations chief again declined to postpone the test, based on Dr. Stagg's opinion that the physical requirements of the certification for a ladder truck would not exceed the restriction. The plaintiff thereafter was able to get an earlier appointment. Dr. Blum declined to state that the plaintiff was unfit to take the test, claiming this was in part a legal conclusion beyond his expertise and in part a matter for a psychologist to evaluate the claim of a physical basis for stress. The plaintiff agreed to take the certification "under protest and duress."

The certification required the successful completion of all 12 components. The plaintiff made two critical driving errors. First, he got out of the driver's seat and walked toward the rear of the truck while leaving it in reverse gear (though the parking brake kept the truck from moving). Hearing the backup alarm, he returned and put the truck in neutral.[7] Second, he ran over the curb with the right front tire when parking on a downhill slope. The examiner issued a failing grade. The examiner had never seen anyone else make these mistakes. The City notified the plaintiff on December 8, 2000, that his dismissal would be effective as of December 15.

In its decision affirming the dismissal of the plaintiff, the Commission concluded that two medical opinions authorized the administration of the certification on its scheduled date; that his physical condition did not contribute to his inability to pass the certification;[8] that the plaintiff had not otherwise shown a valid reason for a postponement of the certification; and that the certification tasks represented the regular duties of a firefighter under stress at the scene of a fire, thus "testing" stress that the plaintiff may have experienced did not excuse his failure. The Commission concluded there was cause to dismiss him for inability to perform his duties.

B

As noted earlier, on the December 15, 2000, effective date of his dismissal, the plaintiff filed an application for disability retirement with CalPERS dated August 31, 2000. CalPERS referred the matter to the City for its initial determination of whether the plaintiff satisfied the criterion for a disability, namely a medical condition resulting in a substantial inability to perform his usual duties. (*Haywood, supra,* 67 Cal.App.4th at pp. 1303–1304.) Citing

---

[7] The plaintiff committed a similar error at the scene of a fire in February 1999, which resulted in the truck rolling a few feet toward a crowd of onlookers before he was able to set the parking brake. This was among the bases for discipline underlying the 1999 settlement agreement.

[8] The Commission's decision did not otherwise address any effect of the plaintiff's physical condition on his ability to perform his regular duties.

*Haywood,* the City notified the plaintiff that he was ineligible for a disability retirement as a result of his dismissal for cause from employment. CalPERS agreed: "You were terminated from employment for reasons that were not the result of a disabling medical condition. Additionally, the termination does not appear to be for the purpose of preventing a claim for disability retirement. Therefore, under the *Haywood* case, you are not eligible for disability retirement."

The plaintiff filed an administrative appeal of the adverse decision. (Cal. Code Regs., tit. 2, § 555.1.) He argued "that his having failed the November 2, 2000[,] testing was directly linked to his degraded performance due to his work-related low back injury . . . : the same back condition that is the subject of his application for service-connected disability retirement." Although not framed as part of the issue of a medical basis for his dismissal for cause, he also argued that the reports of his treating physician were unrebutted evidence of an eligibility for disability antedating his test failure.

The hearing officer concluded that the plaintiff failed the test because of his test anxiety, and his "effort to attribute his test failure to a disability is not competently or credibly established by a preponderance of [the] evidence." In the view of the hearing officer, "What emerges from a consideration of the evidence submitted [to] this tribunal is a [claimant] who, in an effort to establish eligibility, recharacterizes past events to suit his goal. The effort is not lost on this [hearing officer] but bears little fruit and diminishes the compelling force of [his] testimony and credibility." The hearing officer did not make any findings on whether the plaintiff had been eligible for a disability retirement before failing the test, because the defendants (as we have noted elsewhere) had successfully moved to exclude consideration of whether his physical condition rendered him unfit for duties other than the certification test. On appeal to CalPERS, the plaintiff cited the exclusion of this evidence as reversible error.[9] CalPERS adopted the hearing officer's decision.

## DISCUSSION

Other than his misdirected effort to avoid the preclusive effect of the Commission's decision, the plaintiff's 11 remaining arguments (which echo each other under their different headings in contravention of the requirements for focused briefing (*Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830, fn. 4 [41 Cal.Rptr.2d 263])), coalesce around three primary contentions: the applicability of *Haywood,* the trial court's errors in

---

[9] As the plaintiff raises this among his issues on appeal, we have alluded to the excluded evidence in this factual summary.

its review of the record, and the purported failure of defendant City to fulfill its duty to apply on his behalf for a disability retirement. We shall treat these in turn.

## I

Under various headings, the plaintiff contends that *Haywood* is inconsistent with the reasoning in *Willens v. Commission on Judicial Qualifications* (1973) 10 Cal.3d 451 [110 Cal.Rptr. 713, 516 P.2d 1] (*Willens*). He also contends that *Haywood* is an "unenacted rule of law" not reflected in the Government Code, and is "premised on mere dicta." Finally, he believes that *Haywood* is inapposite, because he was willing to continue at his job, was disabled before his dismissal, and submitted an application for a disability retirement on the effective date of his dismissal.

## A

We must first digest the holding of *Haywood*. Firefighter Haywood manifested an insubordinate attitude during his career, eventually leading to his dismissal in April 1993. Some months prior to his dismissal, he filed a workers' compensation claim for psychic injuries from "excessive supervision." He continued to consult with psychiatrists for depression after his dismissal, and eventually recovered. After his dismissal, he applied for a disability retirement on the ground that he was psychologically unable to work for the fire district because his belief that it had treated him unfairly would trigger renewed depression and render him unable to perform his duties.[10] The employer denied the application in March 1994. (*Haywood, supra,* 67 Cal.App.4th at pp. 1295–1296, 1298–1299, 1302.)

■ We noted the lack of any evidence that Haywood was eligible for a disability retirement before the dismissal, or of any basis in a physical or mental disability for the conduct resulting in the dismissal. (*Haywood, supra,* 67 Cal.App.4th at p. 1306.) We concluded that the legislative intent underlying the disability retirement laws presupposed a continuing if abated employment relationship—the disabled annuitant can petition to return to active service, and the employing agency can compel testing to determine if the disability is no longer continuing (at which point it can insist on a return to active service). Therefore, if an applicant is no longer eligible for reinstatement because of a dismissal for cause, this also disqualifies the applicant for a disability retirement. (*Id.* at pp. 1305–1306.) To interpret the statutes otherwise overrides the power of public agencies to discipline employees, and would reward poor employees with early retirement. (*Id.* at

---

[10] However, he was able to work for any *other* fire district.

p. 1306.) Finally, we rejected an argument that the timeliness of an application for disability retirement is determinative of eligibility. (*Id.* at pp. 1306–1307.)

## B

In the first place, our conclusion that a dismissal for good cause unrelated to a medical disability disqualifies an employee for a disability retirement was essential to the dispute before us and our analysis. Nothing about it exceeds the necessary ratio decidendi of the case. We therefore reject the plaintiff's characterization of the principle as mere unpersuasive dicta.

█ We are also unimpressed with his criticism of our holding as an "unenacted" rule of law. A fundamental role of the courts is to apply legislative enactments to sets of circumstances on the basis of the perceived intent of the legislative body. We found our holding inherent in the structure of the statutes governing disability retirement, and the respect we are to accord the disciplinary powers of state agencies. If *Haywood* were indeed a judicial derelict on the waters of the law of disability retirement (*Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509, 1543 [80 Cal.Rptr.2d 94]), the Legislature has had five years in which to scuttle it. The absence of legislative action supports our belief in the propriety of our interpretation.

## C

Turning to the plaintiff's claim that *Haywood* conflicts with controlling authority, nothing in *Willens* compels another result, as it turns on peculiarities of the office of judge. In June 1970, the judge ran unopposed in the primary for a new term on the San Joaquin County Superior Court starting January 1971. The grand jury indicted him for bribery, which *suspended* him automatically from office *with pay* pursuant to our Constitution. A write-in candidate defeated him in the November 1970 general election, and the judge filed for a disability retirement on the same day *before the end of his term.* He was convicted of the charges in June 1971. (*Willens,* supra, 10 Cal.3d at pp. 453–454, 455, fn. 4, 456.) There was substantial evidence that the judge had physical and emotional disabilities at the time of his application, dating back to late 1969. (*Id.* at p. 455.) The Commission had denied the application on the basis of his *suspension* from office. (*Id.* at p. 454.) However, the Supreme Court held that his suspension from office under the Constitution did not include a forfeiture of salary until his *conviction* was final, and his salary included his disability benefits. There was no basis in the judicial disability statutes for forfeiting his benefits upon his later conviction, and absent a clear

legislative direction to that end, the Supreme Court would not supply one. (*Id.* at pp. 453, 456, 458–459.)

The plaintiff, by contrast, was not suspended from his job at the time he applied for a disability retirement. Rather, his "term of office" had already ended, based on events even further antedating his disability application. The principles in *Willens* otherwise involve the subject we took pains to exclude from our holding in *Haywood*: a party otherwise entitled to a disability retirement before a dismissal for cause. *Willens* therefore is not of any assistance to the plaintiff.

## D

It is not a material factual distinction from *Haywood* that the plaintiff desired to continue working. *Haywood* contrasted the "unwilling" firefighter with an employee "unable" to perform job duties. That was, however, only the manner in which the facts in *Haywood* presented the dichotomy. The distinction with which we were concerned is between employees dismissed for cause and employees unable to work because of a medical disability.

■ Equally immaterial is the plaintiff's emphasis on the filing date of his application for disability retirement. That he filed it on the effective date of his dismissal rather than thereafter is a distinction without a difference. As we stated in *Haywood,* the timeliness of the application is a procedural issue without any significance to the substantive entitlement to a disability retirement. (*Haywood, supra,* 67 Cal.App.4th at p. 1307.)

## E

■ This leaves the sole subject on which the plaintiff has correctly interpreted *Haywood* in contrast with the defendants. As earlier noted, we repeatedly cautioned that our holding would not apply where the cause for dismissal was the result of a disabling medical condition, or where the dismissal would be "preemptive of an otherwise valid claim for disability retirement." (*Haywood, supra,* 67 Cal.App.4th at p. 1307.) This caveat flows from a public agency's obligation to apply for a disability retirement on behalf of disabled employees rather than seek to dismiss them directly on the basis of the disability (*id.* at p. 1305 [citing § 21153]) or indirectly through cause based on the disability (*Patton v. Governing Board* (1978) 77 Cal.App.3d 495, 501–502 [143 Cal.Rptr. 593]).

■ Our use of the term "preempt" admittedly could lead one to the interpretation that both defendants have embraced: an intent to thwart an otherwise valid claim for disability. However, as the plaintiff has correctly

attempted to argue throughout the CalPERS proceedings, even if an agency dismisses an employee *solely* for a cause *unrelated* to a disabling medical condition, this cannot result in the forfeiture of a matured right to a pension absent express legislative direction to that effect. (*Willens, supra,* 10 Cal.3d at pp. 458–459; *Skaggs v. City of Los Angeles* (1954) 43 Cal.2d 497, 503–504 [275 P.2d 9]; see *Pearson v. County of Los Angeles* (1957) 49 Cal.2d 523, 543–544 [319 P.2d 624].) Thus, if a plaintiff were able to prove that the right to a disability retirement matured before the date of the event giving cause to dismiss, the dismissal cannot preempt the right to receive a disability pension for the duration of the disability. (See *In re Gray* (1999) State Personnel Bd. Precedential Dec. No. 99-08, p. 6 [disability retirement effective before dismissal does not forestall dismissal; however, dismissal does not affect receipt of disability retirement]. ) Conversely, "the right may be lost upon occurrence of a condition subsequent such as lawful termination of employment before it matures . . . ." (*Dickey v. Retirement Board* (1976) 16 Cal.3d 745, 749 [129 Cal.Rptr. 289, 548 P.2d 689] (*Dickey*).)

■ The key issue is thus whether his right to a disability retirement matured before plaintiff's separation from service.[11] A vested right matures when there is an unconditional right to immediate payment. (*In re Marriage of Mueller* (1977) 70 Cal.App.3d 66, 71 [137 Cal.Rptr. 129]; see *In re Marriage of Brown* (1976) 15 Cal.3d 838, 842 [126 Cal.Rptr. 633, 544 P.2d 561].) In the course of deciding when the limitations period commenced in a mandate action against a pension board, the Supreme Court noted that a duty to grant the disability pension (i.e., the reciprocal obligation to a right to immediate payment) did not arise at the time of the injury itself but when the pension board determined that the employee was no longer capable of performing his duties. (*Tyra v. Board of Police etc. Commrs.* (1948) 32 Cal.2d 666, 671–672 [197 P.2d 710] ["the right has not come into existence until the commission has concluded that the condition of disability renders retirement necessary."])[12] In the present case, a CalPERS determination of eligibility did not antedate the unsuccessful certification on the ladder truck. His right to a disability retirement was thus immature, and his dismissal for cause defeated it.

■ Conceivably, there may be facts under which a court, applying principles of equity, will deem an employee's right to a disability retirement

---

[11] Neither the facts nor the briefing in the present case require us to decide whether the event extinguishing a right to a disability retirement is the effective date of the dismissal, the date of the decision to dismiss the employee, or the date of the underlying conduct giving cause for the dismissal.

[12] *Dickey* pointed out that *Tyra's* discussion of when the right to disability was sufficiently *mature* to enforce did not apply to the question of when the right had *vested* so as to entitle the employee to the independent judgment standard of review in a writ of administrative mandate. (*Dickey, supra,* 16 Cal.3d at pp. 749–750, 751.)

to be matured and thus survive a dismissal for cause. This case does not present facts on which to explore the outer limits of maturity, however.

It is not as if the plaintiff had an impending ruling on a claim for a disability pension that was delayed, through no fault of his own, until after his dismissal. Rather, he did not even initiate the process until after giving cause for his dismissal.

▮ Nor, for that matter, is there undisputed evidence that the plaintiff was eligible for a CalPERS disability retirement, such that a favorable decision on his claim would have been a foregone conclusion (as perhaps with a loss of limb). At best, the record contains medical opinions of a permanent disability for purposes of the prior and pending workers' compensation claims. But a workers' compensation ruling is not binding on the issue of eligibility for disability retirement because the focus of the issues and the parties is different. (*Bianchi v. City of San Diego* (1989) 214 Cal.App.3d 563, 567 [262 Cal.Rptr. 566]; *Summerford v. Board of Retirement* (1977) 72 Cal.App.3d 128, 132 [139 Cal.Rptr. 814].) And for purposes of the standard for a disability retirement, the plaintiff's medical evidence is not unequivocal.[13] The defendants would have a basis for litigating whether this evidence demonstrated a substantial inability to perform his duties or instead showed only discomfort making it difficult to perform his duties, which is insufficient. (*Hosford v. Board of Administration* (1978) 77 Cal.App.3d 854, 862 [143 Cal.Rptr. 760]; *Mansperger v. Public Employees' Retirement System* (1970) 6 Cal.App.3d 873, 877 [86 Cal.Rptr. 450]; *In re Keck* (2000) CalPERS Precedential Bd. Dec. No. 00-05, pp. 12–14.) Thus, an *entitlement* to a disability retirement cannot rest on the medical evidence of the plaintiff.

---

[13] As Dr. Blum noted in his initial evaluation, the basis for a finding of disability was not the physical condition of the back but the subjective experience of pain; while there was "a long history of multiple complaints and prior back problems . . . , he has always recovered in short order previously . . . ." On his return to work in September 2000, the plaintiff objected to the weight restriction on his duties, telling Dr. Blum that he could lift heavier objects. In Dr. Blum's September 2000 opinion that the plaintiff's condition was permanent and precluded a return to full duty, he relied on the plaintiff's report that the jarring inherent in his work caused pain that interfered with his work, but did not find a physical basis for disability. Finally, after reviewing a videotape of the plaintiff from the fall of 2000 in which he lifted his young child and a small keg without apparent difficulties, Dr. Thompson reaffirmed his opinion but noted that permanent work preclusions might not be as severe "in that the patient is certainly observed as having periods of time over an extended period in which he appears to be functioning fairly normally with respect to his back"; as he explained this in a deposition in connection with the CalPERS proceedings, he meant that the plaintiff "has intermittent significant episodes of back disability. He also has an exposure to conditions which exist in firefighting which intermittently expose him to increased risk of the appearance of symptoms and disability. He is not that way all of the time."

In short, the plaintiff does not come within the exceptions to *Haywood.* His dismissal for cause consequently extinguished his right to a disability retirement.

II–IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Scotland, P. J., and Sims, J., concurred.

A petition for a rehearing was denied July 19, 2004, and appellant's petition for review by the Supreme Court was denied September 22, 2004. Geroge, C. J., did not participate therein.

---

*See footnote, *ante,* page 194.