Filed 7/9/14  Hill v. Appeals Bd. City of San Jose CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JAMES C. HILL as Trustee, etc. et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>THE APPEALS HEARING BOARD OF<br>THE CITY OF SAN JOSE et al.,<br><br>    Defendants and Respondents. | H038406<br>(Santa Clara County<br>Super. Ct. No. 1-11-CV200857) |

By petition for writ of administrative mandamus (Code Civ. Proc., § 1094.5), appellants James C. Hill et al. challenged Resolution 11-05 of Respondent Appeals Hearing Board of the City of San Jose (Board), which declared a two-sided billboard owned by appellants a public nuisance, ordered appellants to cease their operation of the billboard, and imposed a $100,000 administrative penalty.[1]  On appeal, appellants contend that the trial court erred in denying their petition because:  (1) a conflict of interest required the entire Board to recuse itself; (2) the evidence before the Board failed to establish that the billboard was an illegal nonconforming use constituting a public nuisance; and (3) imposition of a $100,000 fine was "improper."  For the reasons stated here, we will affirm the judgment.

---

[1]  Unspecified statutory references are to the Code of Civil Procedure.

## I.     ADMINISTRATIVE AND TRIAL COURT PROCEEDINGS

Appellants own and operate a two-sided billboard located adjacent to U.S. Highway 101 on property owned by Respondent San Jose Family Housing Partners, L.P. (SJFHP) in the City of San Jose.[2]  Appellants operate the billboard on an easement recorded in December 2000.

According to the administrative record before the Board, Leonard & Co., Inc., applied for a use permit in October 1969 to the County of Santa Clara (County) for the "[e]rection of one 12' x 48' outdoor advertising display" on the subject property.   At that time, the property was located in an unincorporated part of the County.  The County Board of Supervisors issued a use permit in April 1970 for "an outdoor advertising structure (12' x 48')."  That use permit references file number 17P 69.7.  A diagram that also references file number 17P 69.7, dated April 1969 and referred to by the parties as the "Mangold" diagram, shows a billboard supported by four pillars.  Leonard & Co. also obtained a building permit from the County in May 1970 for an "advertising sign (Free Standing)," which likewise references file number 17P 69.7.  The "inspection record" area of the County building permit does not reflect the completion of any inspections related to the billboard's construction.

In addition to County approvals, Leonard & Co., Inc., obtained an outdoor advertising structure permit for the subject property in April 1970 from the California Department of Public Works.  The dimensions of the billboard listed in that state permit called for a 14-foot by 52-foot display.

---

[2]  SJFHP participated in the administrative proceedings before the Board and successfully intervened in the trial court.  Appellants and SJFHP have been embroiled in litigation since 2007 regarding the view impact of low-income housing constructed by SJFHP on the subject property.  (See *Hill v. San Jose Family Housing Partners, LLC* (2011) 198 Cal.App.4th 764.)

The record is unclear regarding exactly when the billboard was constructed, though the parties agree that it was constructed within a few years after issuance of the May 1970 County building permit. When originally constructed, and continuing to the date the Board issued Resolution 11-05, the billboard was supported by two pillars. It is also difficult to determine the original size of the display from the administrative record. The County building permit authorized a 12-foot by 48-foot display while the state permit authorized a 14-foot by 52-foot display. The only other evidence in the record regarding the historical size of the billboard display comes from an excerpt from the deposition testimony of Richard Mahlmann, which was attached to a letter submitted by SJFHP to the Board. According to SJFHP's letter, Mahlmann was deposed in 2008 as one of appellants' witnesses in a separate easement enforcement action against SJFHP. In his deposition testimony, Mahlmann stated that in approximately 2006 he paid to increase the size of the billboard from 14-feet by 48-feet to 18-feet by 48-feet.

The City annexed the subject property in 1981. In 1985, the City prohibited the construction of new billboards.

In January 2009, the City's code enforcement office began to investigate whether appellants' billboard was constructed without proper permits. After an internal investigation and property inspections, the City issued a nuisance abatement cease and desist order to appellants in April 2010. The cease and desist order recited that the billboard was constructed "[i]n or about 1972" when the property was still located in an unincorporated part of the County. The order alleged that the billboard was not constructed in compliance with the 1970 County building permit and was expanded by four feet in 2006 without any permits from the City. The order concluded that because the billboard was not constructed pursuant to a permit, it was not a legal nonconforming use when the property was annexed by the City in 1981 nor when the City banned new billboards in 1985. The order instructed appellants immediately to cease and desist "operation and maintenance of any and all billboards" on the subject property and

informed them that failure to comply with the order could result in the imposition of administrative penalties.

A Board hearing in September 2010 regarding the cease and desist order was continued to allow appellants to apply for legal nonconforming status from the City's planning department. Appellants applied for legal nonconforming status in October 2010 based on the billboard having been constructed under a valid permit. In November 2010, the City's planning department denied appellants' application for legal nonconforming status via letter. The letter explained that because San Jose Municipal Code section 23.02.1010 prohibits billboards within the City, appellants would have to show "that the billboard was legally established meeting all applicable codes, prior to July 26, 1985 [the date the billboard prohibition was enacted]." The letter stated that despite the presence of the County building permit, based on the permitting history of the subject property "there is nothing to support that the billboard was legally constructed since there were no inspections during construction." Further, "[w]ithout a Final Inspection, the Building Permit issued by the County of Santa Clara would have become null and void." For these reasons, the planning department concluded that "the subject billboard is not legal nonconforming … ." (Emphasis omitted.)

Following the City planning department's determination that appellants' billboard was not a legal nonconforming use, the Board reconvened for a public hearing in January 2011. In response to questions from the Board, counsel for appellants disclosed that appellants claimed the monthly revenue for one face of the billboard was between $12,000 to $15,000 when they brought their easement enforcement action against SJFHP and that although SJFHP's housing units now block part of the billboard's view, "it still is generating a decent amount of money per month." Counsel conceded that the permitting record for the billboard contained a four-pillar diagram, which was not used when constructing the actual billboard. Counsel also suggested that the Board had a conflict of interest and should not decide this issue because the City "is substantially and

dramatically economically invested" in SJFHP's low-income housing on the subject property by virtue of providing loans and other funding for that project.

After the close of public testimony, Board chair Overton stated: "I think our issue is fairly narrow and that's to determine whether this is really a legal billboard or whether it is a public nuisance, basically, and, in my opinion, I think that even as far back as 1970, this -- this billboard was illegal. I mean even … the first use permit that they got doesn't coincide with what's actually there, it went from four-pillar to two-pillar and the size changed, so … in my opinion, there's not any competent evidence that this was ever a legal billboard." Similarly, Board member Hernandez reasoned: "If the structure had been built as a four-tier, then we could move on to inspections and easements and everything else that is being discussed, but the bottom line is the structure was built illegally, it was not built according to the designs that were submitted and there is no proof that anything was ever submitted intended [*sic*] as the structure is right now, so I'm going to have to side with the City on this as well."

The Board approved Resolution 11-05, finding that "[s]ince the billboard is not a legal nonconforming sign, its continued maintenance constitutes a public nuisance." In addition to ordering appellants to "immediately cease and desist the operation and maintenance of any and all billboards" on the subject property, the resolution imposed a $100,000 administrative penalty on appellants under San Jose Municipal Code section 1.13.150.

Appellants challenged the Board's decision by verified petition for writ of administrative mandamus. (§ 1094.5.) After briefing, the court issued a tentative ruling denying the petition and held a hearing in April 2012. At the conclusion of that hearing, which lasted less than one day, the court adopted its tentative ruling and denied the petition for writ of mandate. The court later signed a written order and entered judgment denying the petition. The record does not reflect any request by appellants for a

statement of decision from the trial court at any point during the trial court proceedings. Appellants timely appealed.

## II.    DISCUSSION

### A. CONFLICT OF INTEREST

Appellants claim that the City had a conflict of interest regarding the administrative enforcement action because SJFHP's low-income housing on the subject property was partially financed by loans from the City. Appellants further argue that this alleged conflict of interest must be imputed to the Board. However, appellants' claim is not based on any legal authority. By citing neither legal authority nor reasoned analysis applying that authority to the facts of the case, appellants have forfeited their conflict of interest claim. (*Tichinin v. City of Morgan Hill* (2009) 177 Cal.App.4th 1049, 1084, fn. 16.)

### B. STANDARD OF REVIEW AND EFFECT OF NO STATEMENT OF DECISION

Appellants claim the trial court erred by failing to articulate a standard of review and not providing written findings of fact and conclusions of law to support its judgment denying the petition. The Board and SJFHP claim the standard of review was "not material" to the trial court's review because the evidence supporting the Board's decision was "overwhelming." The Board further argues that the trial court was not required to issue a statement of decision because appellants did not request one. (Citing § 632.)

Section 1094.5 provides two alternative standards of review for trial courts to apply when reviewing a petition for writ of administrative mandate, "depending on the nature of the rights involved." (*JKH Enterprises, Inc. v. Department of Industrial Relations* (2006) 142 Cal.App.4th 1046, 1057 (*JKH Enterprises*).) When the administrative agency decision implicates a " 'fundamental vested right,' " the trial court "exercises its independent judgment upon the evidence disclosed in a limited trial de novo in which the court must examine the administrative record for errors of law and exercise its independent judgment upon the evidence." (*Ibid.*, quoting *Bixby v. Pierno*

(1971) 4 Cal.3d 130, 143-144.)  In all other cases, "the superior court's review is limited to examining the administrative record to determine whether the adjudicatory decision and its findings are supported by substantial evidence in light of the whole record."  (*JKH Enterprises, supra,* at p. 1057.)

Regardless of which standard of review applies in the trial court, our standard of review is always substantial evidence.  (*JKH Enterprises, supra,* 142 Cal.App.4th at p. 1058.)  When a fundamental vested right is implicated and the trial court exercises its independent judgment, we review whether substantial evidence supported the trial court's judgment.  When the proper standard of review in the trial court is substantial evidence, our function is identical to that of the trial court and entails reviewing "the administrative record to determine whether the agency's findings were supported by substantial evidence, resolving all conflicts in the evidence and drawing all inferences in support of them."  (*Ibid.*)  And where, as here, the petitioner fails to make a timely request for a statement of decision from the trial court (§ 632), we "must infer any finding to uphold the judgment that has substantial evidence in support in the administrative record[,]" (*Smith v. City of Napa* (2004) 120 Cal.App.4th 194, 198-199 (*Smith*)), substantial evidence being evidence that "is reasonable in nature, credible and of solid value."  (*JKH Enterprises, supra,* at p. 1057.)

Appellants argue that the trial court had a duty to issue written findings of fact and conclusions of law regardless of their failure to request a statement of decision.  Section 632 unequivocally states that "[i]n superior courts, upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required."  While findings of fact and conclusions of law are never required, a court must issue "a statement of decision explaining the factual and legal basis for its decision … upon the request of any party appearing at the trial."  (*Ibid.*)  That request must be timely made "within 10 days after the court announces a tentative decision unless the trial is concluded within one calendar day or in less than eight hours over more than one day in which event the

request must be made prior to the submission of the matter for decision." (*Ibid.*; see also California Rules of Court, rule 3.1590.)

Section 632 applies in section 1094.5 administrative mandamus proceedings. (*Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 67; *Milligan v. Hearing Aid Dispensers Examining Com.* (1983) 142 Cal.App.3d 1002, 1004, fn. 3.) Because appellants did not request a statement of decision in the trial court, the court had no duty to prepare one. Appellants' reliance on *Ocheltree v. Gourley* (2002) 102 Cal.App.4th 1013, is misplaced. In *Ocheltree*, the court of appeal reversed the trial court's denial of a petition for writ of mandate because the trial court issued its decision before the administrative record for the case was lodged. (*Id.* at pp. 1017-1018.) Because the court reversed the judgment for that different and independently adequate reason, the court's passing statement that "if the trial court does not make such findings [on the material issues in the petition] the judgment must be reversed" is non-binding dictum. (*Id.* at p. 1018.)

Given appellants' failure to request a statement of decision, our review is the same regardless of the applicable standard of review in the trial court because where no statement of decision is requested, we must infer any finding to affirm the judgment that is supported by substantial evidence in the administrative record. (*Smith, supra,* 120 Cal.App.4th at pp. 198-199.) We therefore review the administrative record to determine whether it contains substantial evidence to support the trial court's denial of appellants' petition.

**C. SUBSTANTIAL EVIDENCE SUPPORTS THE PUBLIC NUISANCE FINDING**

Appellants offer numerous reasons that purportedly support a finding that the billboard is a legal nonconforming use. In chronological order, these reasons are as follows: the 1970 County building permit was valid; that permit allowed a 14-foot by 48-foot billboard; the billboard was constructed by a licensed contractor pursuant to that permit; the construction is valid despite the lack of an inspection record because the

County did not require inspections in 1970; and any additions to the billboard's display size were temporary extensions authorized by the City's municipal code.

Regarding the 1970 County building permit, referencing file number 17P 69.7, we agree that substantial evidence supports a finding that the permit was valid when issued. However, that is where our agreement with appellants' contentions ends. Simply stated, appellants' billboard is not the billboard contemplated by the file documents accompanying the 1970 County building permit. The Mangold diagram, which references file number 17P 69.7 in two locations, shows a billboard supported by four pillars. Appellants do not contest that their billboard is and always has been supported by only two pillars. Because the actual billboard on the ground does not correspond with the billboard approved by the County when it approved the use and building permits in 1970, substantial evidence supports the Board's finding that the billboard is not a legal nonconforming use and therefore constitutes a public nuisance. As Board chair Overton aptly explained: "even … the first use permit … doesn't coincide with what's actually there, it went from four-pillar to two-pillar and the size changed, so … there's not any competent evidence that this was ever a legal billboard."

Appellants now contend, for the first time on appeal, that the Mangold diagram was "improperly placed" in file number 17P 69.7 and was actually the diagram for a project at a different location with a different file number. Because appellants did not make this argument before the Board, they are barred from raising the argument on appeal for failure to exhaust their administrative remedies. (*California Clean Energy Committee v. City of San Jose* (2013) 220 Cal.App.4th 1325, 1344 ["[I]ssues must be first raised with the final decisionmaking authority if one wishes to seek judicial relief."].) Indeed, rather than contest the applicability of the Mangold diagram before the Board, counsel for appellants conceded that appellants had not produced a two-pillar design and that the only design in the record was the four-pillar Mangold diagram.

Because we find that the Board's decision, as well as the trial court's denial of appellants' petition, was supported by substantial evidence in the administrative record, we do not reach appellants' additional arguments regarding the legality of their billboard.

**D. SUBSTANTIAL EVIDENCE SUPPORTS THE $100,000 ADMINISTRATIVE PENALTY**

Appellants essentially argue that there is no factual basis for the Board's decision to impose the $100,000 administrative penalty. The City responds that the $100,000 administrative fine was reasonable based on evidence that each display face of appellants' billboard generated between $10,000 and $15,000 per month in revenue.

City of San Jose Municipal Code section 1.13.150 (section 1.13.150) allows the Board to impose an administrative penalty of up to $100,000 to compel compliance with nuisance abatement cease and desist orders.[3] Section 1.13.150 lists factors the Board may consider in determining the amount of the penalty, including the duration of the public nuisance, the nature of the public nuisance, and the economic impact of the penalty on the person or entity responsible for its payment. (§ 1.13.150(B).)

According to Resolution 11-05, the $100,000 penalty reflects "approximately $826.44 per day for 121 days of non-compliance with the Cease and Desist Order … ." The testimony before the Board regarding the income generated by the billboard reflected counsel's recollection of the amount of income claimed by appellants in their easement enforcement lawsuit against SJFHP. Counsel for SJFHP estimated the range of monthly income at $10,000 to $15,000 for each face of the two-faced billboard. Counsel for appellants stated that the monthly income was "in the area of 12 to $15,000 … for the prime north face," but that SJFHP's housing development "obliterated" that view, presumably reducing the monthly income; however, counsel conceded that the billboard was still "generating a decent amount of money per month." Appellants did not produce

---

[3] Though the full text of section 1.13.150 was not included in the administrative record, we take judicial notice of that section because it was before the Board when it made its decision. (Evid. Code, §§ 452, subd. (b), 459.)

any direct evidence regarding the actual income generated by the billboards.  In discussing the amount of the fine, Board chair Overton stated: "I think that the income, even though there was no direct testimony, the income for these billboards is fairly significant.  I think that based on that … we should go with the City's recommendation of the $100,000 in administrative penalties … ."

Based on the record before it, the Board was entitled to assume that the income for appellants' billboard was between $20,000 to $30,000 per month ($10,000 to $15,000 per face of the two-sided billboard).  At roughly $25,000 per month for the 121-day window identified in Resolution 11-05, the penalty was roughly equal to the income received by appellants for the billboard during that period.  Additionally, although section 1.13.150(C) states that penalties may only accrue from the date of service of the cease and desist order, pursuant to section 1.13.150(B)(1) the Board could consider the duration of the public nuisance in determining the amount of the fine.  When the City's investigation began in 2009, appellants' billboard had existed for close to 40 years and had been an illegal nonconforming use constituting a public nuisance within the City since at least 1985.  That duration, along with the monthly income estimates and the lack of contrary income evidence, provided substantial evidence to support the administrative penalty.

## III. DISPOSITION

The judgment is affirmed.

_____

Grover, J.

**WE CONCUR:**

_____

Elia, Acting P.J.

_____

Mihara, J.