Filed 12/12/23  Suess v. California Public Employees Retirement System CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| JAMES SUESS, | |
| Plaintiff and Appellant, | G062730 |
| v. | (Super. Ct. No. CIVSB2106412) |
| CALIFORNIA PUBLIC EMPLOYEES RETIREMENT SYSTEM et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from an order of the Superior Court of San Bernardino County, David S. Cohn, Judge.  Affirmed.

Law Offices of Linda Louise Scott and Linda Louise Scott for Plaintiff and Appellant.

Matthew G. Jacobs, Elizabeth Yelland and Austa Wakily for Defendant and Respondent California Public Employees Retirement System (CalPERS).

Lozano Smith, Steve Ngo and Jessica Serrato for Defendant and Respondent City of Pomona.

*          *          *

James Suess, a former police corporal with respondent City of Pomona (City), appeals from the trial court's denial of his petition for a writ of mandate to direct the CalPERS Board of Administration to grant his application for industrial disability retirement. Suess filed the application nearly 20 months after he had been terminated for cause by the City; he failed to contest his termination. As we explain, the trial court properly denied Suess's demand for mandate; we therefore affirm the court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

In May 2016, the Pomona Police Department Internal Affairs Unit received a citizen complaint against Suess. The complaint, filed by Vasken Asadourian, a relative of one of Suess's neighbors, alleged that Suess assaulted him, resulting in injury to his right arm and the left side of his head. Although Suess had a long-standing dispute with his neighbors, he had never met Asadourian before the alleged incident. Sergeant William Knight investigated the allegations and produced a report. Suess claimed he acted in self-defense. Suess also provided Sergeant Knight with video footage from his residence, which captured the incident.

On July 9, 2016, Suess's neighbor, Neshan Boymoushakian, filed another complaint against Suess regarding his harassment of his family. Sergeant Knight also investigated these allegations and produced another report.

Suess was notified of both complaints and was interviewed during both investigations. On August 9, 2016, Suess was placed on paid administrative leave pending completion of these investigations.

On June 7, 2017, the City served Suess with a Notice of Intent to Terminate on the basis of misconduct including battery, unabated harassment of his neighbor, and

2

dishonesty during his interviews. Suess requested a pre-disciplinary meeting with his department, which was held on July 18, 2017. At that meeting, Suess suggested he "'suffered physical, mental and emotional trauma' and need[ed] proper care and treatment." While it was unclear to Pomona Police Chief Paul Capraro whether Suess was suggesting his conduct was the result of a disability, he "did not provide any documentation substantiating [his] alleged disability or request any accommodations related to this incident near the time of incident or early in the investigation."

Chief Capraro then determined, "[E]ven with timely documentation and a request for an accommodation, your behavior here is not protected under the ADA. A potential disability does not immunize your behaviors from disciplinary action. Moreover, accommodation would not apply under these circumstances as your behavior described below occurred while you were off-duty."

On August 3, 2017, the City notified Suess he was terminated from his employment as a police corporal effective August 4, 2017. The City provided Suess with notice of his right to appeal the decision within 15 days. Suess did not appeal.

In April 2017, several months before his termination, Suess filed a workers' compensation claim based on his involvement in a 2012 officer-involved shooting incident which occurred on February 26, 2012. After a high-speed chase on that date, a suspect pointed a shotgun at Suess and another police officer from a different jurisdiction (West Covina) who pursued the suspect into Pomona. The other officer shot and disarmed the suspect. The suspect was later convicted of attempted murder of Suess and other officers. Suess did not request psychological services at the time. He continued to perform his duties as a police officer until his off-duty misconduct led to disciplinary proceedings in 2016.

On May 10, 2017, the administrator for the City's workers' compensation program notified Suess that his claim was "denied based on a violation of [the] statute of limitations L[abor] C[ode ]5410, and the lack of current substantial medical evidence."

3

As with his termination, Suess did not appeal the denial of his workers' compensation claim.

In April 2019, twenty months after his termination of employment from the City, Suess filed a disability retirement election application with respondent CalPERS based on posttraumatic stress disorder, among other disabling conditions. During the period of his employment as a police officer for the City, he was a local safety member of CalPERS.

On April 29, 2019, CalPERS contacted the City requesting "various documents to review so that they could evaluate whether to approve or go forward with the industrial disability retirement application." After reviewing Suess's file, CalPERS discovered "[he] was terminated from his position as a police corporal with the City of Pomona" effective August 4, 2017. Because Suess left his qualifying employment "for reasons which were not the result of a disabling medical condition," CalPERS determined he was "not eligible for disability retirement." Accordingly, on July 22, 2019, CalPERS denied Suess's application.

On August 16, 2019, Suess timely filed an administrative appeal challenging CalPERS's decision. Pursuant to Government Code section 21156, subdivision (b)(2), on August 27, 2020, an administrative law judge (ALJ) from the Office of Administrative Hearings (OAH) conducted a hearing to review the matter in advance of a final decision by the CalPERS Board of Administration (Board). The ALJ "limited [the hearing] to the issue of whether [] Suess may file an application for industrial disability retirement or whether his eligibility is precluded by operation of law."

The ALJ heard testimony, including Suess's account of the 2012 shooting incident. Suess testified the City had a policy relating to officer-involved shootings in which it provided a licensed psychotherapist to each "involved officer" in an officer involved shooting. Suess testified that the City did not send him for an evaluation

4

following the 2012 incident.  He did not seek out medical treatment on his own following the shooting, because he did not believe there was anything wrong with him that required medical treatment.  Suess returned to work without any restrictions or accommodations.  According to Suess, he did not believe at the time that the 2012 incident affected his ability to perform his job duties.

Suess also testified that in August 2016, the City's police chief told him he believed Suess had anger management issues and referred him to the City's Employee Assistance Program, through which Suess obtained counseling.  Through therapy, Suess came to believe he suffered posttraumatic stress disorder (PTSD) related to the 2012 shooting incident, which exacerbated unresolved personal issues.  Suess testified he believed the PTSD precipitated or caused the misconduct that resulted in his termination.

On September 28, 2020, ALJ Vallera J. Johnson issued a proposed decision in which she concluded, "Suess is not eligible for disability retirement as a matter of law.  Therefore, his application for disability retirement is canceled."  The ALJ relied on *Haywood v. American River Fire Protection District* (1998) 67 Cal.App.4th 1292 (*Haywood*) and *Smith v. City of Napa* (2004) 120 Cal.App.4th 194, 205 (*Smith*).

On November 18, 2020, the Board adopted the ALJ's proposed decision as its final decision with minor technical changes; it sent notice to Suess on November 23, 2020.  On January 22, 2021, the Board rejected Suess's subsequent request for reconsideration.

On February 22, 2021, Suess sought in the trial court a writ of administrative mandamus; he filed an amended petition on October 4, 2021.  On June 28, 2022, Suess's petition for writ of mandate was denied by the Honorable David Cohn.  Suess now appeals.

5

## DISCUSSION

1. *Governing Law and Standard of Review*

The mandate procedure outlined in Code of Civil Procedure section 1094.5 governs challenges to administrative decisions made as the result of a proceeding for which (1) a hearing was required; (2) evidence was taken; and (3) discretion in the determination of facts was vested in an inferior board. (Code Civ. Proc.,[1] § 1094.5 subd. (a).) Under section 1094.5, the trial court's inquiry is limited to (1) "whether the respondent has proceeded without, or in excess of, [its] jurisdiction"; (2) "whether there was a fair trial"; and (3) "whether there was any prejudicial abuse of discretion." (*id.*, subd. (b).) "'If the order or decision of the agency substantially affects a fundamental vested right, the trial court, in determining under section 1094.5 whether there has been an abuse of discretion because the findings are not supported by the evidence, must exercise its independent judgment on the evidence and find an abuse of discretion if the findings are not supported by the weight of the evidence.'" (*Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 51.) Our review on appeal "is limited to verifying that substantial evidence supports the trial court's findings." (*Smith v. City of Napa* (2004) 120 Cal.App.4th 194, 198.)

Suess contends the trial court's denial of his mandate petition must be reversed because the ALJ misapplied the *Haywood* and *Smith* cases, which Suess argues "were inapposite to this case." We disagree.

As explained in *Haywood*, "where, as here, an employee is fired for cause and the discharge is neither the ultimate result of a disabling medical condition nor preemptive of an otherwise valid claim for disability retirement, the termination of the employment relationship renders the employee ineligible for disability retirement . . . ."

---

[1] All further unlabeled statutory references are to the Code of Civil Procedure.

6

(*Haywood*, *supra*, 67 Cal.App.4th at p. 1307.)  "Nor are disability retirement laws intended as a means by which an unwilling [-to-faithfully-and-competently-perform] employee can retire early in derogation of the obligation of faithful performance of duty.  "'The pension roll is a roll of honor—a reward of merit, not a refuge from disgrace; and it would be an absurd construction of the language creating it to hold that the intention of the Legislature was to give a life annuity to persons who, on their merits, as distinguished from mere time of service, might be dismissed from the force for misbehavior.'"  (*Id.* at p. 1305.)

In *Smith*, the appellate court held that a terminated employee may qualify for industrial disability retirement if he or she had a "matured" right to do so before his or her termination for cause.  (*Smith*, *supra*, 120 Cal.App.4th at pp. 205-206.)  *Smith* explained that "[a] vested right matures when there is an unconditional right to immediate payment," which *Smith* held must, in most cases, arise from "a CalPERS determination of [disability] eligibility" that "antedate[s]" the actions or omissions resulting in the employee's dismissal for cause.  (*Id.* at p. 206.)

*Smith* recognized an exception to the rule set forth in *Haywood*: "[c]onceivably, there may be facts under which a court, applying principles of equity, will deem an employee's right to a disability retirement to be matured and thus survive a dismissal for cause."  (*Smith*, *supra*, 120 Cal.App.4th at pp. 206-207.)  By way of example, *Smith* contemplated a scenario in which "the plaintiff had an impending ruling on a claim for a disability pension that was delayed, through no fault of his own, until after his dismissal."  (*Id.* at p. 207.)  Or, alternately, where there was "undisputed evidence that the plaintiff was eligible for a CalPERS disability retirement, such that a favorable decision on his claim would have been a foregone conclusion (as perhaps with a loss of limb)."  (*Ibid.*)

But *Smith* held the disability evidence must be "unequivocal" to constitute a matured right.  (*Smith*, *supra*, 120 Cal.App.4th at p. 207.)  It is not enough when, "[a]t

7

best, the record contains medical opinions of a permanent disability for purposes of . . . prior and pending workers' compensation claims." (*Ibid.*) Hence, if the "defendants would have a basis for litigating whether th[e] evidence demonstrated a substantial inability to perform his duties or instead showed only discomfort making it difficult to perform his duties," then the plaintiff's disability case "is insufficient" (*ibid.*), to "come within the exceptions to *Haywood*" (*id.* at p. 208). In such cases, the plaintiff's "dismissal for cause . . . extinguishe[s] his right to a disability retirement." (*Ibid.*)

Suess claims *Smith* and *Haywood* are distinguishable because he was "deprived of the ability to present medical evidence of his condition [by] a violation by the City [of] its own policy regarding the provision of professional counseling to officers following an officer-involved shooting." Suess suggests he would have had more compelling evidence of a disabling PTSD condition if the City had adhered to that policy. He also suggests CalPERS "abused its discretion" in denying his application for disability retirement "without obtaining medical evidence available to it from Respondent City of Pomona."

Again, we disagree. The ALJ correctly observed in her ruling, "an applicant for disability retirement has the burden of proving . . . that he is entitled to it." (*Glover v. Board of Retirement* (1989) 214 Cal.App.3d 1327, 1332.) Suess did not establish an unequivocal matured right to disability retirement under *Smith* where his own testimony indicated he was not incapacitated by the 2012 shooting. As *Haywood* explained, "[D]isability retirement laws contemplate the potential reinstatement of that [employer-employee] relationship if the employee recovers and no longer is disabled." (*Haywood*, *supra*, 67 Cal.App.4th at p. 1305.) Termination for cause precludes that background premise for legitimate disability retirement, requiring rejection of a disability application. (*Id.* at pp. 1305-1306.) Suess had the opportunity after the 2012 shooting incident to develop evidence to meet his burden to show an unequivocal, permanent

disability; he failed to show he was disabled from performing his duties at any time prior to his termination for cause.

Suess contends that, unlike "the appellant in *Haywood*" who "was given the opportunity to be heard on his application for disability retirement," Suess was "summarily denied the ability even to apply . . . based on the claim his termination was 'for cause.'" We are not persuaded. The ALJ considered Suess's application. The fact that the ALJ was not convinced by Suess's evidence does not mean he was denied a hearing.

Suess also argues opaquely that "CalPERS abused [its] discretion by failing to admit evidence of a pretextual termination and a violation of the Peace Officer Bill of Rights" (POBR). (Heading format adjusted.) Suess does not develop this argument or provide any authority to support it, as required by the Rules of Court. (Cal. Rules of Court, rule 8.204(a)(1)(B).) He provides no citation for the POBR. Suess had the opportunity to present evidence of his alleged disabling PTSD condition; the ALJ did not find the evidence presented demonstrated Suess had accrued a matured right to disability retirement. There was no error.

The claim of pretextual termination appears to be based on, as Suess argues in his opening brief, his assertion he was fired "for . . . making known the unlawful acts of other officers, including malicious attempts to have another officer wrongfully terminated as well as defrauding tax payers by seeking overtime pay for work not done." In his reply brief, Suess indicates he "has a[n] unlawful termination lawsuit pending against the City of Pomona Police Department which is identified as Los Angeles Superior Court Case number 19PSCV00095 and is set for trial to commence on June 26, 2023. The Causes of Action in this case are Wrongful Termination in Violation of Public Policy and Intentional Infliction of Emotional Distress."

Suess has failed to establish how this pending action is relevant to our review or may have been relevant to the ALJ's determination. Under the governing rules

9

of appellate advocacy, "conclusory claims of error will fail" (*In re S.C.* (2006) 138 Cal.App.4th 396, 408), and "[w]e are not bound to develop appellants' arguments for them" (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830).  To the extent Suess is challenging the propriety of his termination, the ALJ correctly concluded that issue was not open for dispute or reevaluation where Suess did not appeal the City's decision.  As the Supreme Court has explained, "'so long as such a quasi-judicial decision is not set aside through appropriate review procedures the decision has the effect of establishing the propriety of the [employer's] action.'"  (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 70.)  Suess fails to meet his burden to show error in the trial court's mandate decision or the ALJ's underlying ruling.

## DISPOSTION

The trial court's order denying Suess's petition for mandate is affirmed. Respondents are entitled to their costs on appeal.


GOETHALS, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


DELANEY, J.

10